Walter J. BELLOMO, Plaintiff,

v.

PENNSYLVANIA LIFE COMPANY, Defendant.

No. 78 Civ. 4631 (VLB).

United States District Court,
S. D. New York.

April 9, 1980.

As Amended June 30, 1980.

Elkind & Lampson, P. C., New York City, for plaintiff.

Shea & Gould, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

The plaintiff, Walter Bellomo, a former employee of the defendant, Pennsylvania Life Co., has brought this action for breach of a stock option contract. The defendant has made a motion to dismiss for lack of personal jurisdiction and improper venue. At oral argument held on June 15, 1979, I suggested that the court did not have enough facts before it to make the determination called for by the motion. I adjourned the motion pending further discovery and submission of evidence gleaned from that discovery. The parties have submitted additional affidavits and the motion is therefore ripe for decision. For the reasons which follow, the motion is denied.

The defendant is a holding company, at the head of an extensive network of subsidiaries and sub-subsidiaries, most of which are engaged in the business of writing and servicing a variety of kinds of insurance policies. The defendant is a Delaware corporation. The plaintiff seeks to predicate jurisdiction and venue not on the activities of the defendant itself, but on the activities

in New York of several[1] of its sub-subsidiaries (which, for simplicity, are referred to as subsidiaries herein).

The plaintiff contends that the parent, through the subsidiaries, is "doing business" in New York within the meaning of CPLR § 301 and the federal venue statute, 28 U.S.C. § 1391(c). Plaintiff argues that the activities of the New York subsidiaries may be attributed to the parent for purposes of venue and personal jurisdiction[2] on one of two theories: 1) that the subsidiaries are mere alter egos of the parent; or 2) that they are acting as agents of the parent.

### 1) Alter Ego

The plaintiff has not established that the parent and subsidiaries have so disregarded the formal indicia of corporate separation that the latter are "mere departments" or alter egos of the former. The defendant has submitted evidence that its New York subsidiaries maintain their own books, records, and bank accounts, that their respective boards of directors meet independently, and that "Pennsylvania Life Company is not involved in the management of the daily affairs of William Penn or Bankers and Shippers." (DiSipio Affidavit, ¶ 6).[3]

The plaintiff has not refuted these facts. In support of his motion he has established that the New York corporations are wholly owned subsidiaries, that the parent is a holding company which engages in business solely through its subsidiaries, that its annual reports describe the business of the parent, subsidiaries and sub-subsidiaries as if they were all part of a common enterprise, and that the annual report consolidates the earnings statements of all the affiliates.

■ The parent and subsidiary may not, on the basis of these facts, be treated as the same entity for jurisdictional purposes. Control through 100% stock ownership does not in itself constitute a subsidiary the alter ego of the parent, *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925). Only day to day control by the parent "so complete that the subsidiary is, in fact, merely a department of the parent," *Delagi v. Volkswagenwerk*, 29 N.Y.2d 426, 278 N.E.2d 895, 897, 328 N.Y.S.2d 653, 657 (N.Y.1972), will constitute the requisite control. Nor does the parent subject itself to jurisdiction merely by holding the affiliate group out to the public as a unitary enterprise. *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519 (S.D.N.Y.1972) (statements in annual report tended to establish agency, but were insufficient to establish alter ego relationship).

### 2) Agency

The evidence adduced by the plaintiff does, however, render it more likely than not that the New York subsidiaries act as the agents of the parent Pennsylvania Life. In *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y.2d 533, 227 N.E.2d 851, 281 N.Y.S.2d 41 (N.Y.1967), the New York

---

1. Bankers and Shippers of New York and William Penn Life Ins. Co. of N.Y.: insurance underwriters. Penn General Agencies of N.Y.: an insurance brokerage house. Pennsylvania Securities Co.: a securities brokerage house. The defendant appears to concede that the first two of these are doing business in New York. It is not clear what defendant's position is with regard to the last two.

2. The existence of personal jurisdiction, within constitutional due process limits, is governed by state law. The nature of the contacts required to establish venue is governed by federal law. In analyzing the relationship between affiliated corporations for venue purposes, however, the federal courts have looked to the standards developed for determining personal jurisdiction, e. g., *Sunrise Toyota, Ltd. v. Toyota Motor Co.*, 55 F.R.D. 519 (S.D.N.Y.1972); *Frazier v. Alabama Motor Club, Inc.*, 349 F.2d 456 (5th Cir. 1965).

3. In his original papers in opposition to the motion, the plaintiff sought to predicate jurisdiction on the activities of these two subsidiaries alone. In his affidavits submitted after further discovery, he suggests that two additional subsidiaries are doing business in New York. The failure of the defendant to address the question of its corporate relationship to the two other subsidiaries does not, however, affect my resolution of this motion. The burden is on the plaintiff to establish something more than 100% stock ownership, and he has failed to meet that burden.

Court of Appeals held that a foreign corporation, whose affiliate was doing on its behalf in New York all the business which the foreign corporation "could do were it here by its own officials," was "doing business" through an agent and subject to jurisdiction under N.Y. CPLR § 301. The court found that the common ownership of the two corporations was significant "only because its gives rise to a valid inference as to the broad scope of the agency in the absence of an express agency agreement." *Id.* 281 N.Y.S.2d at 45, 227 N.E.2d at 854. The *Frummer* test has been applied by the federal courts in determining venue over foreign affiliates, *e. g. Sunrise Toyota, supra.*

The defendant in this case is a holding company, a corporate shell. It does not conduct business directly, but only through its subsidiaries. From one standpoint, then, the New York subsidiaries could not possibly be doing business in New York for Pennsylvania Life since Pennsylvania Life has no business to be done. From another standpoint, however, everything the New York subsidiaries do satisfies the *Frummer* test since their business, together with the business of other subsidiaries, constitutes the only business of the parent.

In *McPheron v. Penn Central Transportation Co.,* 390 F.Supp. 943 (D.Conn.1975), a train passenger brought a personal injury action against, *inter alia,* the railroad holding company. Only the holding company's subsidiary transportation company was doing business in the state. On the holding company's first motion to dismiss for lack of personal jurisdiction the court declined to dismiss, finding that on the record before it, it could "infer no significant purpose in the parent company's organization other than that of holding and controlling the subsidiary operating company's stock." *Id.* at 945.

On motion for reargument the holding company introduced additional evidence which established that "the holding company was formed for the purpose of facilitating a program of corporate acquisition and diversification, and, indeed had engaged in commercial activities pursuant to that purpose." *Id.* at 955. The holding company accomplished this diversification through the acquisition of non-railroad properties. *Id.* at 956. On the basis of the supplemented record, the district court found that the business purposes of the holding company were independent of those of the transportation company and accordingly declined to treat them as one for the purposes of jurisdiction.

While the *Frummer* test was not discussed in *McPheron* (jurisdiction was governed by Connecticut law), its analysis of the problem suggests a standard for determining the agency of a holding company subsidiary. Where a holding company is nothing more than an investment mechanism—a device for diversifying risk through corporate acquisitions—the subsidiaries conduct business not as its agents but as its investments. The business of the parent is the business of investment, and that business is carried out entirely at the parent level. Where, on the other hand, the subsidiaries are created by the parent, for tax or corporate finance purposes, to carry on business on its behalf, there is no basis for distinguishing between the business of the parent and the business of the subsidiaries. There is a presumption, in effect, that the parent is sufficiently involved in the operation of the subsidiaries to become subject to jurisdiction.[4]

The record before me now suggests that Pennsylvania Life is not merely an investor, but is rather a super-corporation engaged primarily[5] in underwriting and selling a

---

4. We are here concerned with jurisdiction over a foreign corporation, and not with the question of determining whether or not to "pierce the corporate veil" for purposes of holding the parent liable for activities of the subsidiary. *Frummer v. Hilton Hotels International, Inc.,* 19 N.Y.S.2d 533, 281 N.Y.S.2d 41, 45, 227 N.E.2d 851, 854 (N.Y.1967).

5. Penn Life also owns a savings and loan association and also owns, or owned at the time suit was brought, a number of securities brokerage firms. It is possible that these were acquired as investments and are not subject to Penn Life control. At least two of the New York subsidiaries, however, are insurance companies in the mainstream of Penn Life operations.

variety of insurance policies through several subsidiaries. Its own representations to stockholders and to potential stockholders support that conclusion. Accordingly, on the record as it stands now, I find that the plaintiff has established prima facie that the New York subsidiaries are doing business in New York as the agents of Pennsylvania Life.

SO ORDERED.