**AMERICAN TELEPHONE & TELE-GRAPH COMPANY, Defendant-Third-Party-Plaintiff-Appellant,**

v.

**COMPAGNIE BRUXELLES LAMBERT, now known as Groupe Bruxelles Lambert S.A., et al., Third-Party-Defendant-Appellee.**

No. 94–16368.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1995.

Decided Aug. 28, 1996.

E. Robert Wright, Thomas, Snell, Jamison, Russell and Asperger, Fresno, California, for defendant-third-party-plaintiff-appellant.

Jeffrey S. Koenig and Bruce G. Merritt, Debevoise & Plimpton, Los Angeles, California, for defendant-third-party-defendant-appellee.

Before: BROWNING, CANBY and HALL, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

AT&T appeals the dismissal of its CERC-LA claim against Groupe Bruxelles Lambert, S.A. ("GBL"), the former parent corporation of a company whose operations caused environmental contamination at a site near Bakersfield, California. AT&T contends the district court erred by finding GBL was not

subject to personal jurisdiction.[1] We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

## I.

This appeal stems from CERCLA litigation regarding a metal reclamation facility operated by defendant Keystone Resources, Inc. ("Keystone"). Keystone's Bakersfield facility, which treated and disposed of metal for AT&T, operated on land leased from plaintiff John Chrisman. Defendant GBL, a Belgian holding company, indirectly owned 80 percent of Keystone's stock. AT&T contends this ownership interest, coupled with GBL's alleged "total control" over Keystone, establishes personal jurisdiction over GBL.

GBL has its principal place of business in Brussels, conducts no business in the United States and had no direct involvement in operating the Bakersfield reclamation facility. GBL's wholly-owned U.S. subsidiary, the Lambert Brussels Group ("LBC"), bought 80 percent of Keystone's stock in 1976.[2] Keystone began losing money and GBL directed LBC to sell its Keystone stock. In March 1984 LBC sold its shares back to Keystone for nominal consideration.

In March 1992, Chrisman sued Keystone and AT&T, among others, alleging Keystone's operations had resulted in the release of cadmium, copper, lead, and dioxin and seeking to recover cleanup costs pursuant to CERCLA, 42 U.S.C. §§ 9607 and 9613. AT&T filed a third-party complaint against GBL. Because of GBL's prior ownership of Keystone, AT&T alleged GBL was directly liable under CERCLA § 9607(a) as a former site operator. AT&T also alleged GBL was liable because of its control over Keystone and Keystone's management.[3]

After being served with process in Belgium, GBL filed a motion to dismiss for want of personal jurisdiction. The district court granted the motion. This appeal followed.

## II.

■■■ Personal jurisdiction may be general or specific. AT&T does not contend GBL is subject to general jurisdiction but only to specific jurisdiction, which allows a court to adjudicate claims that arise out of the defendant's contacts with the forum. *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 413 (9th Cir.1977). As the party seeking to invoke federal jurisdiction, AT&T has the burden of establishing its existence. *Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir.1986); *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977).

■■■ We decide de novo whether jurisdiction was lacking. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir.1995). However, because "the trial court ruled on the issue relying on affidavits and discovery materials without holding an evidentiary hearing, dismissal is appropriate only if the plaintiff has not made a prima facie showing of personal jurisdiction." *Fields*, 796 F.2d at 301. In determining whether AT&T has met this burden, uncontroverted allegations in AT&T's complaint must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [AT&T's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." *WNS, Inc. v. Farrow*, 884

---

1. We dispose of AT&T's remaining argument, regarding discovery, in a separate unpublished memorandum.

2. The remaining 20 percent of Keystone's shares were retained by three of the company's prior owners and senior officers, who continued to manage Keystone after the company's acquisition by LBC and occupied three positions on Keystone's board of directors. Although LBC was entitled to select the remaining four board members, the purchase agreement included protections for the minority shareholders, who had veto power over dividends, borrowing decisions, and any transactions involving LBC. The minority

shareholders were eventually ousted from their positions on the board of directors and sold their interest in the company.

3. AT&T alleged GBL (1) had a principal-agent relationship with Keystone, (2) had conspired with Keystone to dispose of hazardous substances while evading liability, (3) had sufficient control over Keystone's management that it could have prevented the illegal release of hazardous substances by Keystone, and (4) exercised such complete control over Keystone that Keystone acted as "a mere shell, instrumentality, and conduit" for GBL.

F.2d 200, 203 (5th Cir.1989) (quoting *D.J. Investments v. Metzeler Motorcycle Tire Agent Gregg*, 754 F.2d 542, 545–46 (5th Cir. 1985)); *see Ziegler*, 64 F.3d at 474.

### A.

GBL submitted affidavits from Rene Van Achter, a GBL employee who sat on Keystone's board of directors, stating that GBL conducted no business in the United States and had no direct involvement in operating Keystone's Bakersfield facility, and that no GBL or LBC employee was involved in Keystone's day-to-day affairs. GBL's indirect ownership of Keystone stock involved no contacts with California; Van Achter attended no meetings in California, and communications with Keystone typically took place in Brussels, New York City, or Pittsburgh.

AT&T offered no evidence that GBL was directly involved with the Bakersfield facility. Instead, it relied on a miscellany of events and internal Keystone decisions, undisputed by GBL, which AT&T contends demonstrate GBL's total control over Keystone and demonstrate that GBL and Keystone had an alter ego relationship sufficient to subject GBL to personal jurisdiction once jurisdiction over Keystone was established.[4]

### B.

■ When subject matter jurisdiction is premised on a federal question, a court may exercise specific jurisdiction over a defendant if a rule or statute authorizes it to do so and the exercise of such jurisdiction comports with the constitutional requirements of due process. *Go–Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1413 (9th Cir.1989).

■ AT&T argues personal jurisdiction over GBL is authorized by two rules of civil procedure, Rules 4(k)(1)(D) and 4(k)(2), which focus on a defendant's contacts with the nation as a whole. Rule 4(k)(1)(D) allows a court to exercise personal jurisdiction over a defendant when service of summons is "authorized by a statute of the United States." AT&T contends that § 9613(e) of CERCLA permits nationwide service of process and nationwide minimum contacts analysis. *See Go–Video*, 885 F.2d at 1414 (a defendant's nationwide contacts can be considered when Congress has authorized worldwide service of process). However, § 9613(e) authorizes nationwide service of process only in actions by the United States; it does not apply in private actions. *Cf. Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 106, 108 S.Ct. 404, 410–411, 98 L.Ed.2d 415 (1987) (concluding nationwide service of process is not authorized for an implied right of action under the Commodity Exchange Act even though the Act provides nationwide service of process for all other civil actions brought under it).

■ AT&T argues that personal jurisdiction over GBL is supported by the 1993 revisions to Rule 4(k)(2),[5] which it says "ex-

---

**4.** AT&T relied on the following:

During its pre-purchase investigation of Keystone, GBL received reports concerning all of Keystone's facilities and analyzed possible environmental issues relating to the purchase; Through LBC, GBL held a majority of the seats on Keystone's seven-member board; A GBL employee, Van Achter, regularly attended Keystone board meetings and was knowledgeable about details of the company; Beginning in 1976, Keystone was included in LBC's consolidated federal income tax returns; In 1979, with the GBL-elected directors abstaining, the remaining directors voted to make a $1.5 million investment at LBC's request; In 1980, the board approved a proposal, made and seconded by GBL-elected directors, to spend $352,000 on anti-pollution equipment for a Keystone facility;

The GBL-elected directors approved Van Achter's proposal to terminate the employment contracts of Keystone's original owners; A GBL-elected board member, Walter Becker-Fluegel, served as Keystone's chairman beginning in 1981; Although Becker-Fluegel was not employed by GBL or LBC, he was associated with GBL through an industry group known as Sabemin; Keystone's financial condition deteriorated following GBL's investment, resulting in "zero working capital" by January 1982; and GBL's shares in Keystone ultimately were purchased by Great Horn, a company with ties to GBL.

**5.** The rule reads:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons ... is also effective, with

pand[ed] the jurisdictional reach of district courts in federal question cases to a national minimum contacts test." As the advisory committee notes explain, however, the new rule authorizes jurisdiction in federal question cases over defendants who have significant nationwide contacts but are not subject to jurisdiction in any state. Fed.R.Civ.P. 4(k)(2) advisory committee's note. GBL had virtually no direct contacts within the United States.[6]

Alternately, AT&T contends jurisdiction is supported by Rule 4(k)(1)(A), which authorizes jurisdiction over a non-resident defendant who is subject to jurisdiction in the state where the district court is located. Since California's long-arm statute extends to the limits of due process, see Cal.Code Civ. P. § 410.10; Ziegler, 64 F.3d at 473, we consider whether AT&T has shown that (1) GBL purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws, (2) AT&T's claims arise out of or relate to GBL's California activities, and (3) the exercise of jurisdiction over GBL would be reasonable. Ziegler, 64 F.3d at 473; Core–Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1485 (9th Cir.1993). AT&T seeks to establish jurisdiction based on GBL's own California contacts, including its alleged CERCLA liability, and Keystone's California

contacts, arguing Keystone was a mere agent or instrumentality of GBL.

■ GBL's own contacts do not establish jurisdiction. The purposeful availment requirement is designed to ensure that a defendant is not subjected to suit in a jurisdiction through random, fortuitous, or attenuated contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Ziegler, 64 F.3d at 473. GBL's own contacts with California—and, indeed, with the nation—are attenuated at best.[7] The company conducted no business and maintained no offices in California. Its majority interest in Keystone does not suffice to confer specific jurisdiction. See Wells Fargo, 556 F.2d at 420.

■ AT&T argues jurisdiction is proper because GBL committed a tort in California. Specific personal jurisdiction over a non-resident defendant may attach in a tort case if the defendant "merely engages in conduct aimed at, and having effect in, the situs state." Ziegler, 64 F.3d at 473; see Haisten v. Grass Valley Med. Reimbursement Fund, 784 F.2d 1392, 1396–97 (9th Cir.1986). AT&T contends the jurisdictional inquiry is therefore "logically satisfied by a finding of substantive liability as an owner-operator under CERCLA."

■ Even if GBL would be liable under CERCLA,[8] AT&T may not use liability as a

---

respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.
Fed.R.Civ.P. 4(k)(2).

6. AT&T attempts to premise jurisdiction on Van Achter's attendance at Keystone board meetings in the United States. These meetings were held in New York and Pennsylvania. If Van Achter's membership on the Keystone board and attendance at board meetings were sufficient to confer jurisdiction, GBL would be subject to jurisdiction in New York or Pennsylvania and thus would not be within the reach of Rule 4(k)(2).

7. Even considered nationwide, GBL's only contacts were Van Achter's occasional attendance at Keystone board meetings in New York and Pennsylvania and the company's communications with LBC, its U.S. subsidiary.

8. CERCLA imposes liability on any "person," who owned or operated a facility where hazard-

ous substances were disposed of improperly, see 42 U.S.C. §§ 9607(a)(2) and 9601(20)(A)(ii), and CERCLA's definition of "person" makes it clear that parent corporations such as LBC and GBL can be substantively liable for environmental contamination caused by their subsidiaries. See id. § 9601(21) (defining "person" to include "an individual, firm, corporation, association, partnership, consortium, joint venture . . ."); see also Schiavone v. Pearce, 79 F.3d 248, 253–54 (2d Cir.1996); Lansford–Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209, 1220 (3d Cir.1993); United States v. Kayser–Roth Corp., 910 F.2d 24, 26 n. 5 (1st Cir.1990). Not every parent corporation will be liable for its subsidiary's violations of CERCLA, however. A corporation can be liable as an "operator" of a facility only if the evidence indicates it had "substantial control" over the facility. See Kaiser Aluminum, 976 F.2d at 1341 (operator liability attaches "if the defendant had authority to control the cause of the contamination at the time the hazardous substances were released into the environment"). And some circuits have held a parent corporation can be

substitute for personal jurisdiction. Even if the requirement of personal jurisdiction allows a parent corporation to avoid liability, and thus undercuts CERCLA's sweeping purpose "to affix the ultimate cost of cleaning up these disposal sites to the parties responsible for the contamination," *Kaiser Alum. & Chem. Corp. v. Catellus Dev. Corp.*, 976 F.2d 1338, 1340 (9th Cir.1992), liability is not to be conflated with amenability to suit in a particular forum. *See Sher v. Johnson*, 911 F.2d 1357, 1365–66 (9th Cir.1990) ("Liability and jurisdiction are independent."). Personal jurisdiction has constitutional dimensions, *see Go–Video*, 885 F.2d at 1413, and regardless of policy goals, Congress cannot override the due process clause, the source of protection for non-resident defendants.

 AT&T argues that "GBL's domination and control over Keystone, through LBC, constitute the contacts by which GBL purposefully availed itself of the United States' benefits and protection." A parent corporation's relationship with its subsidiary may confer personal jurisdiction over the parent if the subsidiary is acting as the parent company's alter ego, "so as to justify disregard of the corporate entity," *see Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir.1984) (quoting *Sheard v. Superior Court*, 40 Cal.App.3d 207, 114 Cal.Rptr. 743, 745 (1974)), but AT&T failed to make out a prima facie case that Keystone was GBL's alter ego. Keystone would be GBL's alter ego only if AT&T made out a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities of [Keystone and GBL] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* (citing *Watson v. Commonwealth Ins. Co.*, 8 Cal.2d 61, 63 P.2d 295, 298 (1936)). Despite discovery against Keystone—GBL's alleged "alter ego"—AT&T failed to make out a prima facie case. In *Flynt*, the plaintiff made a prima facie showing of an alter ego relationship by submitting affidavits indicating the two sole shareholders of several corporations had converted corporate assets for

their own use, had dealt with the various corporations as if they were one, and had transferred assets among the corporations, leaving some of them undercapitalized. *Flynt*, 734 F.2d at 1393–94.

AT&T makes no similar allegations. The circumstances relied upon to establish GBL's "domination" over Keystone reflect no more than a normal parent-subsidiary relationship. *See* note 4, *supra*. LBC's decision to include Keystone in its consolidated tax return hardly demonstrates domination, nor does the fact that Keystone's board voted to approve purchases after a motion and second from LBC-elected directors. The only questionable transaction AT&T identifies—Keystone's decision to invest $1.5 million at LBC's request—was undertaken by the three minority directors. The LBC-elected directors abstained.

The relationship between Keystone and LBC is similar to that between the parent and subsidiary in *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980). We found no alter ego relationship in *Kramer* even though the parent guaranteed loans for the subsidiary, reviewed and approved the subsidiary's major decisions, placed several of its own directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions.

### III.

We agree with the district court that AT&T failed to establish personal jurisdiction over GBL on any of the grounds upon which it relied.

AFFIRMED.

---

liable as an "owner" only in circumstances that would merit piercing the corporate veil. *See Lansford–Coaldale*, 4 F.3d at 1220. Because we

hold GBL was not subject to personal jurisdiction, we do not resolve the liability issue.