248 F.3d 915 (9th Cir. 2001)
 JOHN DOE, I, Individually and as Administrator of the Estate of his Deceased Child Baby Doe 1 and on behalf of all Others Similarly Situated;
JANE DOE 1, on behalf of Herself, as Administratrix of the Estate of Her Deceased Child Baby Doe 1 and on behalf of all Others Similarly Situated;
JOHN DOE, II; JOHN DOE, III; JOHN DOE, IV; JOHN DOE, V; JANE DOE, II; JANE DOE, III, JOHN DOE, VI; JOHN
DOE, VII; JOHN DOE, VIII; JOHN DOE, IX; JOHN DOE, X; JOHN DOE, XI, on behalf of Themselves and all Others Similarly Situated And Louisa Benson on Behalf of Herself and the General Public, Plaintiffs-Appellants,
v.
UNOCAL CORPORATION, a California Corporation, Defendant,
and
TOTAL, S.A., a Foreign Corporation, Defendant-Appellee.
 No. 99-55576
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted Dec. 5, 2000
Filed April 27, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Judith Brown Chomsky, Elkins Park, Pennsylvania, argued the cause for plaintiffs-appellants.
 Richard R. Mainland, Fulbright & Jaworski L.L.P., Los Ange-les, California, argued the cause for defendant-appellee.
 Appeal from the United States District Court for the Central District of California. Richard A. Paez, District Judge, Presiding. D.C. No. CV-96-06959-RAP.
 Before: Dorothy W. Nelson, Melvin Brunetti and Alex Kozinski, Circuit Judges.
 PER CURIAM:
 
 
 1
 We affirm the district court's judgment and adopt the portions of its opinion, Doe v. Unocal, 27 F. Supp. 2d 1174 (C. D. Cal. 1998), appearing in the Appendix as our own. See Appendix infra.
 
 
 2
 Because appellants have failed to demonstrate by the "clearest showing that denial of discovery [has] resulted in actual and substantial prejudice," the district court did not abuse its discretion in denying discovery on the question of specific jurisdiction. See Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 540 (9th Cir. 1986) (citation omitted).
 
 
 3
 AFFIRMED.
 
 
 4
 APPENDIX*
 
 
 5
 PAEZ, District Judge.
 
 
 6
 * INTRODUCTION
 
 
 7
 Doe plaintiffs, farmers from the Tenasserim region of Burma, bring this class action against defendants Unocal Corporation ("Unocal"), individuals John Imle and Roger C. Beach, who are, respectively, the President and Chairman/ Chief Executive Officer of Unocal, and Total S.A. ("Total"), a French corporation. Plaintiffs allege that the State Law and Order Restoration Council ("SLORC") is a military junta that seized control in Burma (now known also as Myanmar) in 1988, and that the Myanma Oil and Gas Enterprise ("MOGE") is a state-owned company controlled by SLORC that produces and sells energy products. Plaintiffs seek injunctive, declaratory and compensatory relief for alleged international human rights violations perpetrated by defendants in furtherance of defendants Unocal, Total and MOGE's joint venture, the Yadana gas pipeline project.
 
 
 8
 Plaintiffs contend that defendants are building both off-shore drilling stations to extract natural gas from the Andaman Sea and a port and pipeline to transport the gas through the Tenasserim region of Burma and into Thailand. According to plaintiffs' complaint, defendants, through the SLORC military, intelligence and/or police forces, have used and continue to use violence and intimidation to relocate whole villages and force farmers living in the area of the proposed pipeline to work on the pipeline and pipeline-related infrastructure. Plaintiffs allege defendants' conduct has caused plaintiffs to suffer death of family members, assault, rape and other torture, forced labor, and the loss of their homes, in violation of California law, federal law and customary international law. Plaintiffs seek to represent a class numbering in the tens of thousands and consisting of:
 
 
 9
 all residents of the Tenasserim region of Burma (bounded on the north by latitudinal line of 15 degrees 15 minutes North; on the south by the latitudinal line of 13 degrees, 30 minutes North; on the west by the coastline and offshore islands; and on the east by the Thai/Burmese border) who have been, are, or will be subject to the following acts in furtherance of the Yadana gas pipeline project in which defendants are joint venturers: forced relocation, forced labor, torture, violence against women, arbitrary arrest and detention, cruel, inhuman or degrading treatment, crimes against humanity, the death of family members, battery, false imprisonment, assault, negligent hiring, or negligent supervision.
 
 
 10
 Plaintiffs' Response to the February 27, 1998, Order of the Court with Regard to Class Certification at 1. Plaintiffs seek to represent the proposed class and obtain declaratory and injunctive relief on behalf of the class pursuant to Fed. R. Civ. P. 23(b)(2).
 
 
 11
 In addition, plaintiffs seek damages on their own behalf, based on allegations of (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) forced labor; (3) crimes against humanity; (4) torture; (5) violence against women; (6) arbitrary arrest and detention; (7) cruel, inhuman, or degrading treatment; (8) wrongful death; (9) battery; (10) false imprisonment; (11) assault; (12) intentional infliction of emotional distress; (13) negligent infliction of emotional distress; (14) negligence per se; (15) conversion; (16) negligent hiring; (17) negligent supervision; (18) violation of California Business & Professions Code 17200. By their nineteenth claim for relief, plaintiffs seek injunctive and declaratory relief. The Court previously granted the Unocal defendants' motion to strike plaintiffs' fifteenth claim for conversion.
 
 
 12
 Pending before the Court is the Motion of Defendant Total S.A. to Dismiss for Lack of Personal Jurisdiction ("Motion"). At the initial hearing on the Motion on January 12, 1998, the Court granted plaintiffs' request for jurisdictional discovery with respect to general jurisdiction and ordered the parties to meet and confer to create a discovery plan. In the course of jurisdictional discovery, Total provided plaintiffs with over 500 pages of documents and produced five witnesses for deposition: (1) Alain-Marc Irissou (Total's General Counsel); (2) Dominique Mounier (chief in-house legal counsel for Hutchinson, S.A. ("HSA"), a Total subsidiary based in Paris); (3) Herve Oberreiner (Executive Vice-President of Total America, Inc. ("TAI"), a direct U.S. subsidiary of Total); (4) John Powell (the Controller for TAI); and (5) Thomas Popma (Controller of Hutchinson Corporation ("HC"), a Total indirect subsidiary in Grand Rapids, Michigan). Mason Decl., P9. Following discovery and supplemental briefing, the Court again heard oral argument on the Motion on August 18, 1998.
 
 
 13
 On August 28, 1998, the Court directed the parties to submit further briefing as to whether
 
 
 14
 Total's subsidiary holding companies in California, or Total's subsidiary holding companies in the United States with substantial California contacts, act as Total's agents by selectively acquiring and holding operating companies in specific niches in which Total has significant market share worldwide.
 
 
 15
 Minute Order of August 28, 1998. The parties submitted supplemental papers in September 1998, completing the argument and record before the Court.
 
 
 16
 Upon consideration of the parties' papers submitted in conjunction with the motion, including all supplemental briefs, declarations and supporting documentation and the oral arguments of counsel, for the reasons explained below, the Motion is GRANTED. . . . Plaintiffs have not shown that this Court has personal jurisdiction over Total.
 
 II
 DISCUSSION
 B. Rule 12(b)(2) Motion to Dismiss
 
 17
 Fed. R. Civ. P. 12(b)(2) governs dismissal for lack of personal jurisdiction. In order to exercise personal jurisdiction over a nonresident defendant in a case presenting a federal question, the district court must first determine that "a rule or statute potentially confers jurisdiction over the defendant and then conclude that asserting jurisdiction does not offend the principles of Fifth Amendment due process." Go-Video, Inc. v. Akai Electric Co., Ltd., 885 F.2d 1406, 1413 (9th Cir. 1989).
 
 
 18
 It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir. 1984), cert. denied, 470 U.S. 1005, 84 L. Ed. 2d 380, 105 S. Ct. 1359 (1985). The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). However,
 
 
 19
 [w]hen a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant.
 
 
 20
 Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995) (citations omitted); see also AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (where trial court rules on jurisdictional issue based on affidavits and discovery materials without holding evidentiary hearing, plaintiff need only make prima facie showing). Where not directly controverted, plaintiff's version of the facts is taken as true for the purposes of a 12(b)(2) motion to dismiss. AT & T, 94 F.3d at 588. Likewise, "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists." Id. (citations omitted).
 
 
 21
 Total's motion to dismiss for lack of personal jurisdiction raises interesting questions regarding when a "national contacts" test is available under Fed. R. Civ. P. 4(k)(2) . . . and whether, with respect to general and specific personal jurisdiction under the forum state's long-arm statute, the alter ego and agency doctrines require the Court to attribute to a foreign national the contacts of its subsidiaries in the United States.
 
 1. Rule 4(k)(2)
 
 22
 By virtue of the 1993 Amendments to Fed. R. Civ. P. 4, Rule 4(k)(2) provides that
 
 
 23
 [i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.
 
 
 24
 The Advisory Committee notes reiterate that the provision applies only when "a federal claim is made against a defendant not subject to the jurisdiction of any single state."
 
 
 25
 Rule 4(k)(2) provides no basis for jurisdiction based on Total's direct contacts. Total has no contacts of its own with the United States beyond listing its stock on various exchanges and promoting sales of stock in the United States. Plaintiffs have cited no authority for the proposition that such contacts suffice to establish personal jurisdiction, and the Court is not persuaded that Congress intended for the courts to assert jurisdiction under Rule 4(k)(2) whenever a corporation lists its stock on a United States exchange.
 
 
 26
 Total's remaining potential contacts with the United States are based on the activities of its subsidiaries. If Total's subsidiaries' contacts were imputed to Total, however, several states would have jurisdiction over Total, and Rule 4(k)(2) would not apply. In fact, plaintiffs' counsel stated at oral argument on August 18, 1998 that because they believe Total is subject to personal jurisdiction in several states under the alter ego and agency doctrines, they need not rely on their earlier contention that the Court should exercise personal jurisdiction over Total pursuant to Rule 4(k)(2).
 
 
 27
 . . .
 
 
 28
 3. Rule 4(k)(1)(A) and California's Long-Arm Statute
 
 
 29
 Where the federal statute or rule on which an action is premised does not authorize service to obtain jurisdiction over a defendant, the starting point is the forum state's long-arm statute. Fed. R. Civ. P. 4(k)(1)(A). California's long-arm statute extends jurisdiction to the limits of due process. See Cal. Code of Civ. Pro. 410.10.
 
 
 30
 Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional conceptions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945). Where a defendant deliberately engages in significant activities within a state, purposely availing itself of the privilege of conducting business there, it is presumptively reasonable to require that defendant "submit to the burdens of litigation in that forum as well." Burger King v. Rudzewicz, 471 U.S. 462, 475-76, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985). In such instances," defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id. at 474 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)).
 
 
 31
 Applying the "minimum contacts" analysis, a court may obtain either general or specific jurisdiction over a defendant. If the defendant's activities in the forum are substantial, continuous and systematic, general jurisdiction is available; in other words, the foreign defendant is subject to suit even on matters unrelated to his or her contacts to the forum. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 446, 96 L. Ed. 485, 72 S. Ct. 413 (1952). A court may exercise specific jurisdiction over a foreign defendant if his or her less substantial contacts with the forum give rise to the cause of action before the court. The question is "whether the cause of action arises out of or has a substantial connection with that activity." Hanson v. Denckla, 357 U.S. 235, 250-253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958).
 
 
 32
 The Ninth Circuit has established a three-part test to evaluate the nature and quality of a defendant's contacts so as to determine the availability of specific jurisdiction:
 
 
 33
 (1) The nonresident defendant must do some act or consummate some transaction within the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.
 
 
 34
 (2) The claim must be one which arises out of or results from the defendant's forum-related activities.
 
 
 35
 (3) Exercise of jurisdiction must be reasonable.
 
 
 36
 Gordy v. Daily News, L. P., 95 F.3d 829, 831-32 (9th Cir. 1996). Incorporating the standards set forth in Burger King, the Ninth Circuit has expounded upon the requirements for purposeful availment, noting that purposeful direction of some act having effect in the forum constitutes sufficient contact to exert jurisdiction, and that a lesser showing of contacts with the forum may be sufficient if considerations of reasonableness so require. Haisten, 784 F.2d at 1397.
 
 
 37
 a) Specific Jurisdiction
 
 
 38
 Plaintiffs have not made out a prima facie case that the Court has specific jurisdiction over Total by virtue of its various contracts with Unocal regarding the Yadana pipeline project. Nor have plaintiffs presented sufficient evidence to warrant additional jurisdictional discovery on the issue of specific jurisdiction.
 
 
 39
 (i) Purposeful Availment
 
 
 40
 Purposeful availment, which satisfies the first part of the Ninth Circuit test, requires a finding that the defendant "[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)). However, "'an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts' to support personal jurisdiction." McGlinchy v. Shell Chemical Co., 845 F.2d 802, 816 n. 9 (9th Cir. 1988) (quoting Burger King, 471 U.S. at 478).
 
 
 41
 In Burger King, the Supreme Court explained:
 
 
 42
 [W]e have emphasized the need for a "highly realistic" approach that recognizes that "contract "is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." It is these factors -- prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing -- that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.
 
 
 43
 Burger King, 471 U.S. at 478-79 (citations omitted). The requirement of purposeful availment "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party of a third person." Id.
 
 
 44
 Total's contractual relations with Unocal do not constitute purposeful availment of the benefits and protections of California law. Total presents evidence (1) that it entered into those contracts either by fax and telephone or via meetings in Asia, France and Bermuda; (2) that the law governing the contracts is the law of England, Bermuda or Burma; (3) that the oil in the pipeline will go to Thailand, and possibly to Burma, not to the U. S.; and (4) that the contracts all relate to the pipeline in Burma and have nothing to do with California. Plaintiffs' evidence is simply insufficient to satisfy the standard in the Ninth Circuit. See McGlinchy, 845 F.2d at 816 (finding contacts insufficient to constitute purposeful availment where (1) contract was negotiated in England; (2) contract made no reference to U.S. as place for resolution of disputes; and (3) no authorized agents were alleged to performed any part of the contract in California).
 
 
 45
 (ii) Relation between Claims and Contacts
 
 
 46
 To determine whether a claim arises out of forum-related activities, courts apply a "but for" test. Ballard, 65 F.3d at 1500. Here, the Court considers whether plaintiffs' claims would have arisen but for Total's contacts with California. See id.
 
 
 47
 Plaintiffs present no evidence, and it seems impossible that they would uncover any, suggesting that the pipeline project would not have gone forward without Total's dealings with Unocal. As Total points out, it is far from under-capitalized. Moreover, Total agreed to take on the Yadana project before seeking bids from potential partners. Consequently, it appears from the evidence presented to date that Unocal's negotiations with Total and MOGE were not necessary to the initiation of the project. Consequently, there is no evidence that Total would not have gone forward with the project but for its negotiations, agreements and consultations with Unocal in California.
 
 
 48
 (iii) Reasonableness
 
 
 49
 The bare existence of minimum contacts is not sufficient to allow a court to exercise personal jurisdiction over a defendant. The third step of the Ninth Circuit test requires a finding that assertion of jurisdiction is reasonable. In other words, once the court concludes that a defendant purposefully established minimum contacts with a forum state, and that the claims at issue arise from those contacts, the court must determine whether the assertion of personal jurisdiction would comport with traditional notions of "fair play and substantial justice." International Shoe, 326 U.S. at 326.
 
 
 50
 Plaintiff's evidence is insufficient to establish either purposeful availment or a but-for relationship between Total or its subsidiaries' contractual relations with Unocal in the forum and plaintiffs' claims. Plaintiffs therefore fail to establish specific jurisdiction, and the Court need not reach the third prong of the specific jurisdiction test. Consequently, the Court need not consider the Republic of France's amicus brief for purposes of the inquiry into specific jurisdiction.
 
 
 51
 b) General Jurisdiction
 
 
 52
 Due process is satisfied "when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts' with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice. '"Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984) (quoting International Shoe, 326 U.S. at 326). "The Supreme Court has bifurcated this due process determination into two inquiries, requiring, first, that the defendant have the requisite contacts with the forum state to render it subject to the forum's jurisdiction, and second, that the assertion of jurisdiction be reasonable." Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc., 1 F.3d 848, 851 (9th Cir. 1993) (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 107, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)). Where, as here, the defendant's alleged contacts are through its corporate subsidiaries, the Court must engage in a preliminary inquiry to determine whether the subsidiaries contacts are properly attributed to the defendant.
 
 
 53
 (i) Attributing Contacts of Subsidiaries to the Parent Corporation
 
 
 54
 The existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum. Transure, Inc. v. Marsh and McLennan, Inc., 766 F.2d 1297, 1299 (9th Cir. 1985). As the Supreme Court recently explained in the context of assessing corporate separateness for purposes of liability:[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts. This recognition that the corporate personalities remain distinct has its corollary in the well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do "change hats" to represent the two corporations separately, despite their common ownership.
 
 
 55
 United States v. Bestfoods, 524 U.S. 51, 69, 141 L. Ed. 2d 43, 118 S. Ct. 1876 (1998) (internal marks and citations omitted). In considering a parent corporation's potential liability under CERCLA, the Supreme Court distinguished "a parental officer's oversight of a subsidiary from such an officer's control over the operation of the subsidiary's facility." Id. at 1889. In so doing, the Supreme Court articulated a generally applicable principle that a parent corporation may be directly involved in the activities of its subsidiaries without incurring liability so long as that involvement is "consistent with the parent's investor status." Id. Appropriate parental involvement includes:" monitoring of the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies and procedures. " Id.
 
 
 56
 Nonetheless; "if the parent and subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation." El-Fadl v. Central Bank of Jordan, 316 U.S. App. D.C. 86, 75 F.3d 668, 676 (D.C. Cir. 1996). An alter ego or agency relationship is typified by parental control of the subsidiary's internal affairs or daily operations. See Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1177 (9th Cir. 1980).[2]
 
 
 57
 (a) Alter Ego
 
 
 58
 To demonstrate that the parent and subsidiary are" not really separate entities" and satisfy the alter ego exception to the general rule that a subsidiary and the parent are separate entities, the plaintiff must make out a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996) (citations omitted). The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary "to such a degree as to render the latter the mere instrumentality of the former." Calvert v. Huckins, 875 F. Supp. 674, 678 (E.D. Cal. 1995).
 
 
 59
 For example, where a parent corporation uses its subsidiary "as a marketing conduit" and attempts to shield itself from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied. Cf. United States v. Toyota Motor Corp., 561 F. Supp. 354, 359 (C.D. Cal. 1983). That test is also satisfied where the record indicates that the parent dictates "every facet [of the subsidiary's] business -- from broad policy decisions to routine matters of day-to-day operation." Rollins Burdick Hunter of Southern California, Inc. v. Alexander & Alexander Services, Inc., 206 Cal. App. 3d 1, 11, 253 Cal. Rptr. 338 (2d Dist. 1988). Similarly, under California law, "inadequate capitalization of a subsidiary may alone be a basis for holding the parent corporation liable for the acts of the subsidiary." Slottow v. American Cas. Co. of Reading, Pennsylvania, 10 F.3d 1355, 1360 (9th Cir. 1993).
 
 
 60
 Plaintiffs argue that several of Total's California subsidiaries and United States subsidiaries with California contacts are alter egos of Total. Plaintiffs do not, and based on the evidence could not, seriously contend that Total is the alter ego of its numerous operating subsidiaries in the United States. Plaintiffs present no evidence that Total is involved in the day-to-day operations of its sub-subsidiaries. See Apex Oil Co. v. DiMauro, 744 F. Supp. 53, 58 (S.D.N.Y. 1990) (quoting Bellomo v. Pennsylvania Life Co., 488 F. Supp. 744, 745 (S.D.N.Y. 1980), and holding proper inquiry for alter ego liability is whether parent exercised day-to-day control of subsidiaries).
 
 
 61
 Rather, plaintiffs argue that Total is the alter ego of several of its subsidiary holding companies based on Total's (1) involvement in its subsidiaries' acquisitions, divestments and capital expenditures; (2) formulation of general business policies and strategies applicable to its subsidiaries, including specialization in particular areas of commerce; (3) provision of loans and other types of financing to subsidiaries; (4) maintenance of overlapping directors and officers with its subsidiaries; and (5) alleged under capitalization of holding company subsidiaries. A parent corporation may be directly involved in financing and macro-management of its subsidiaries, however, without exposing itself to a charge that each subsidiary is merely its alter ego. See Fletcher v. Atex, Inc., 68 F.3d 1451, 1459-60 (2d Cir. 1995) (no alter ego liability where parental approval required for leases, major capital expenditures and the sale of the subsidiary's assets); Joiner v. Ryder Sys., 966 F. Supp. 1478, 1485 (C.D. Ill. 1996) (no alter ego liability where parent approved subsidiaries' acquisitions and capital budget); Akzona, Inc. v. E.I. Du Pont De Nemours and Co., 607 F. Supp. 227, 238 (D. Del. 1984) (blurring corporate separateness in language of annual report, overlap of boards of directors, parental approval of large capital expenditures, and parental guaranty of third-party loans to subsidiary insufficient to establish alter ego relationship); In re Hillsborough Holdings Corp., 166 Bankr. 461, 473-74 (Bankr. M.D. Fla. 1994) (proper for parent to provide all financing to a subsidiary), aff'd 176 Bankr. 223 (M.D. Fla. 1994).
 
 
 62
 First, the Court notes that plaintiffs' evidence actually indicates that Total's U.S. subsidiaries are adequately capitalized to maintain their holdings, despite the fact that the subsidiary holding companies must obtain approval and financing from Total (or its French subsidiary Hutchinson, S.A.) for new acquisitions. Plaintiffs' argument that subsidiary holding companies are undercapitalized for their intended business of acquiring new operational subsidiaries improperly assumes that a holding company is a sham corporation whenever it has only enough capital to protect its existing holdings. Plaintiffs provide no authority for that proposition.
 
 
 63
 Plaintiffs next assert that Total improperly controls the flow of money to its subsidiaries. Evidence that a parent provides interest free loans without observing corporate formalities by documenting those loans with promissory notes supports a finding that the parent is the subsidiary's alter ego. Laborers Clean-Up Contract Administration Trust Fund v. Uriarte Clean-Up Service, Inc., 736 F.2d 516, 524 (9th Cir. 1984). Here, although plaintiffs present evidence of numerous loans from Total to its subsidiaries, the evidence indicates that the loans are interest-bearing and that Total has maintained the corporate formalities by properly documenting its loans and capital contributions to its subsidiaries.
 
 
 64
 Likewise, references in the parent's annual report to subsidiaries or chains of subsidiaries as divisions of the parent company do not establish the existence of an alter ego relationship. See Fletcher, 68 F.3d at 1459-60 (references to subsidiary as "division" of Kodak not equivalent to evidence that two companies operated as "single economic entity"); Akzona, 607 F. Supp. at 238 (language of annual report and employee testimony describing subsidiaries as divisions of parent not sufficient, even in conjunction with other evidence, to establish alter ego relationship).
 
 
 65
 Plaintiffs present a wealth of evidence in support of their opposition to the Motion, but their evidence does not suggest such a unity of interest and ownership between Total and its subsidiaries that their separate corporate personalities no longer exist. See American Telephone & Telegraph Co., 94 F.3d at 591. In a case presenting similar questions, the Ninth Circuit found no alter ego relationship was created where the parent company guaranteed loans for the subsidiary, reviewed and approved major decisions, placed several of its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions. Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1177 (9th Cir. 1980), cited in AT & T, 94 F.3d at 591. Plaintiffs' evidence here establishes only that Total is an active parent corporation involved directly in decision-making about its subsidiaries' holdings. Because Total and its subsidiaries observe all of the corporate formalities necessary to maintain corporate separateness, the first prong of the alter ego test is not satisfied, and the Court need not address the equities.
 
 
 66
 (b) Agency
 
 
 67
 The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are "sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services." Chan v. Society Expeditions, Inc., 39 F.3d 1398, 1405 (9th Cir. 1994) (quoting Wells Fargo, 556 F.2d at 423). In Chan, the Ninth Circuit approved the decision of a Pennsylvania district court and found it appropriate to attribute the subsidiary's contacts to the parent. 39 F.3d at 1405 n. 9 (following Gallagher v. Mazda Motor of America, Inc., 781 F. Supp. 1079, 1083-84 (E.D. Pa. 1992)). Rejecting the German corporate defendant's argument that "courts cannot look to the activities of an affiliated corporation for purposes of determining whether its parent corporation was 'doing business' in a state," the Chan court explained that "courts have permitted the imputation of contacts where the subsidiary was 'either established for, or is engaged in, activities that, but for the existence of the subsidiary, the parent would have to undertake itself. '"Id. (quoting Gallagher, 781 F. Supp. at 1083).
 
 
 68
 As the Gallagher court articulated this rule, if a subsidiary performs functions that the parent would otherwise have to perform, the subsidiary then functions as "merely the incorporated department of its parent." 781 F. Supp. at 1084. Consequently, "the question to ask is not whether the American subsidiaries can formally accept orders for their parent, but rather whether, in the truest sense, the subsidiaries' presence substitutes for the presence of the parent." Id. (quoting Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd., 508 F. Supp. 1322, 1342 (E.D.N.Y. 1981)).
 
 
 69
 The Gallagher court distinguished an agency relationship between a parent and its subsidiary from that of a holding company and its subsidiary, explaining that in the case of a holding company the parent could simply hold another type of subsidiary, in which case imputing the subsidiaries' jurisdictional contacts to the parent would be improper. Id. at 1085 (citing Bellomo, 488 F. Supp. at 746). Similarly, the New York district court in Bellomo held that:
 
 
 70
 [w]here a holding company is nothing more than an investment mechanism, [i.e.,] a device for diversifying risk through corporate acquisitions[,] the subsidiaries conduct business not as its agents but as its investments. The business of the parent is the business of investment, and that business is carried out entirely at the parent level. Where, on the other hand, the subsidiaries are created by the parent, for tax or corporate finance purposes, there is no basis for distinguishing between the business of the parent and the business of the subsidiaries.
 
 
 71
 488 F. Supp. at 746 (holding foreign insurance company was "super-corporation" engaged in underwriting and selling insurance policies through its subsidiaries). But see Arch v. American Tobacco Co., Inc., 984 F. Supp. 830, 840 (E.D. Pa. 1997) (holding subsidiary involved in manufacturing, marketing, selling and distributing cigarettes was not parent company's agent under Gallagher test because the parent holding company could simply have held another type of subsidiary).
 
 
 72
 Here, plaintiffs do not make out a prima facie case that Total's operational subsidiaries in California are its agents for purposes of personal jurisdiction. There is no evidence that in the absence of Total's California subsidiaries involved in petrochemical and chemical operations, Total would conduct and control those operations. Plaintiffs recite a number of facts about Total's subsidiaries from Total's annual reports; however, as the Calvert court explained, "consolidating the activities of a subsidiary into the parent's reports is a common business practice." 875 F. Supp. at 678. Total stated in its 1995 annual report that its "US unit," Total Petroleum, Inc., would enable it to expand its marketing network and produce higher value-added specialty products in the United States. That statement is not enough, however, to justify the conclusion that Total would perform the activities of its U.S. operational subsidiaries were they unavailable to act as its "representative."
 
 
 73
 Plaintiffs' contention that Total's holding company subsidiaries with substantial and continuous contacts in California are Total's agents raises a more interesting question. In Chan, the Ninth Circuit considered agency in the context of an operational subsidiary. 39 F.3d at 1404-06. Relying on the district court's opinion in Bellomo, plaintiffs contend that Total is a "super-corporation" similar to the corporate defendant in Bellomo. As plaintiffs emphasize, Total is a multinational energy corporation that holds extensive business interests in the United States through subsidiary holding companies. Our attention, however, is directed at two subsidiary holding companies based in California, Hutchinson Seal Corporation ("HSC") and C.S. Acquisitions, Inc. ("CSAI"). These two holding companies were created to hold the stock of several California operating companies. Although the Court was concerned that Total's indirect subsidiary holding companies were actively involved in finding operating companies to add to Total's business portfolio, Total has shown that HSC and CSAI have not played any role in finding companies to acquire in California or the United States, or in effectuating any such acquisitions. See Mounier and Davis Declarations. Indeed, neither HSC nor CSAI has any employees.
 
 
 74
 As noted above in connection with plaintiffs' alter ego argument, the fact that Total indirectly owns or holds the stock of HSC and CSAI does not, without more, convert these two corporations into general agents for Total for jurisdictional purposes under the Ninth Circuit's agency test articulated in Wells Fargo and Chan. At an irreducible minimum, the general agency test requires that the agent perform some service or engage in some meaningful activity in the forum state on behalf of its principal such that its "presence substitutes for presence of the principal." Gallagher, 781 F. Supp. at 1084. The Court agrees with Total that "neither HSC nor CSAI perform any services or activities for Total. They merely hold assets nothing more." Total's September 9, 1998 Suppl. Memo. at 7. Further, the Court also agrees with Total, as noted by its counsel at the August 28, 1998 hearing, that in the absence of the two California subsidiary holding companies, Total could simply hold the stock of its California operating companies directly as a foreign corporation. More-over, as a multinational energy company, Total could establish other subsidiary holding companies located in some other state or country to hold the stock of the operating companies located in California. Under these circumstances, it simply can not be said that CSAI or HSC are Total's general agents for jurisdictional purposes.
 
 
 75
 Although plaintiffs' argument is based on Bellomo, the Court is not persuaded that it should follow the Bellomo court's analysis here. In Bellomo, the defendant insurance company, Pennsylvania Life, "engaged primarily in underwriting and selling a variety of insurance policies through several subsidiaries [in the forum state]. " 488 F. Supp. at 747. The Bellomo court characterized Pennsylvania Life, which was a holding company, as a "super-corporation "and not a mere investor in other businesses. Taking their clue from Bellomo, plaintiffs argue that Total's world wide holdings and its stated corporate policy of investing in selected niche markets through acquisitions of businesses that further that strategy, show that Total is a "super-corporation" that conducts its energy related businesses through selectively acquired operating companies. By maintaining control of the operating companies through its subsidiary holding companies, plaintiffs argue that the subsidiary companies should be treated as Total's general agents in California for purposes of establishing personal jurisdiction over Total. As noted above, however, the record does not support plaintiffs' contention that Total directly controls the day-to-day activities of the California operating or holding companies. The fact that Total may indirectly control or supervise its subsidiaries, does not lead the Court to a different conclusion.
 
 
 76
 In sum, the Court finds that plaintiffs have not met their burden of showing that Total's subsidiaries with substantial California contacts should be treated as Total's general agents for jurisdictional purposes under the agency doctrine adopted by the Ninth Circuit in Wells Fargo and Chan. Because the Court has concluded that Total does not have sufficient contacts with California, the Court need not reach the final prong of the general jurisdictional analysis -- whether the exercise of jurisdiction over Total would be reasonable. See Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102, 113, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987).
 
 III
 CONCLUSION
 
 77
 For the foregoing reasons, defendant Total S.A.'s motion to dismiss for lack of personal jurisdiction is GRANTED.
 
 
 78
 IT IS SO ORDERED.
 
 
 
 Notes:
 
 
 *
 Because the parties do not appeal the issue of whether service of process was sufficient, the portions of the district court's order discussing that issue have been removed.
 
 
 [2]
 While the Court follows the alter ego and agency tests as articulated by the Ninth Circuit, the Court notes the useful discussion of alter ego as merger and agency as attribution in In re Telectronics Pacing Systems, Inc., 953 F. Supp. 909 (S.D. Ohio 1997).