KUKUI GARDENS CORPORATION,
Plaintiff,

v.

HOLCO CAPITAL GROUP, INC., HC
Mortgage Company, Inc., and Kevin
C. Horton, individually, Defendants.

Civ. No. 08–00049 ACK–KSC.

United States District Court,
D. Hawai'i.

Dec. 19, 2008.

Bert T. Kobayashi, Jr., Brendan S. Bailey, Bruce A. Nakamura, Jason M. Minami, Jesse W. Schiel, Jonathan Strother Moore, Kobayashi Sugita & Goda, Honolulu, HI, for Plaintiff.

Jack F. Schweigert, Honolulu, HI, Mark A. Kaiser, Painesville, OH, for Defendants.

### ORDER DENYING DEFENDANT HORTON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; DENYING DEFENDANT HORTON'S MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS; AND DENYING DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE, OR IN THE ALTERNATIVE, TRANSFER

ALAN C. KAY, Senior District Judge.

### PROCEDURAL BACKGROUND

On May 25, 2008, Plaintiff Kukui Gardens Corporation ("Plaintiff") filed in this Court a First Amended Complaint ("Complaint") against Holco Capital Group, Inc. ("Defendant Holco" or "Holco"), HC Mortgage Company, Inc. ("Defendant HC Mortgage" or "HC Mortgage"), and Kevin C. Horton individually ("Defendant Horton") (collectively, "Defendants"). The Complaint alleges a failure to meet the statutory requirements for release of mortgage, pursuant to Hawaii Revised Statutes ("H.R.S.") § 506–8 ("Count I"), wrongful conversion of Plaintiff's property

("Count II"), fraud ("Count III"), breach of fiduciary duties ("Count IV"), violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* ("Count V"), malicious, wanton, and intentional actions ("Count VI"), and offset of monies due and owing ("Count VII"). *See* Complaint at ¶¶ 68–112.

On May 27, 2008, Plaintiff filed an Ex Parte Motion for Service by Publication On Defendants Horton, HC Mortgage, and Holco. On May 29, 2008, Magistrate Judge Kevin S.C. Chang granted the ex parte motion and ordered that service of process on Defendants be made by publication of the Summons in the Honolulu Advertiser and the South Bend Tribune once a week for four weeks.[1] *See* Order Granting Plaintiff Kukui Gardens Corporation's Ex Parte Motion for Service by Publication, Civ. No. 08–00049 (May 29, 2008); Opposition Exh. O. On July 1, 2008, Plaintiff filed an Affidavit of Publication of Summons, confirming that service of the summons was properly published in the South Bend Tribune on June 8, 15, 22, and 26, 2008. On July 2, 2008, Plaintiff filed an Affidavit of Publication of Summons, confirming that service of the summons was properly published in the Honolulu Advertiser on June 6, 13, 20, and 26, 2008.

On August 8, 2008, Defendants filed the instant Motion to Dismiss ("Motion"), seeking dismissal for lack of personal jurisdiction as to Defendant Horton, insufficient service of process as to Defendant Horton, and improper venue as to Defendants Holco, HC Mortgage, and Kevin C.

Horton, or in the alternative, transfer to the Northern District of Indiana. Defendants attached to the Motion the affidavit of Kevin C. Horton (Horton Aff.).

On October 30, 2008, Plaintiff filed a Memorandum in Opposition to Defendants' Motion ("Opposition"). Plaintiff attached the declaration of its counsel, Bruce Nakamura (Nakamura Decl.), authenticating Exhibits A–O as true and correct copies of the original documents.

On November 6, 2008, Defendants filed a Reply to Plaintiff Kukui Gardens Corporation's Memorandum in Opposition to Defendants' Motion ("Reply").

The Court held a hearing on the Motion on December 12, 2008.[2]

### FACTUAL BACKGROUND [3]

Plaintiff alleges, and Defendants do not dispute, that Plaintiff is, and was at all relevant times, a Hawaii non-profit corporation with its principal place of business in Honolulu, Hawaii. Complaint at ¶ 2. The parties agree that Defendant Holco is, and was at all relevant times, an Indiana corporation with its principal place of business in Indiana. Complaint at ¶ 3; Horton Aff. at ¶ 8. The parties agree that Defendant HC Mortgage was, at all relevant times, an Indiana corporation with its principal place of business in Indiana.[4] Complaint at ¶ 4; Horton Aff. at ¶ 8. The parties agree that Defendant Horton is, and was at all relevant times, a citizen of the state of Indiana. Complaint at ¶ 6; Horton Aff. at ¶ 1.

---

1.  The Honolulu Advertiser is a newspaper of general circulation in the State of Hawaii. The South Bend Tribune is a newspaper of general circulation in the State of Indiana.

2.  Attorney Mark A. Kaiser appeared as counsel pro hac vice for all Defendants.

3.  The facts as recited in this Order are for the purpose of disposing of these motions and are

not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

4.  As of December 4, 2000, HC Mortgage is no longer active under Indiana law after being administratively dissolved. Complaint at ¶ 5.

Defendant Horton is, and was at all relevant times, the President of both Holco and HC Mortgage. Complaint at ¶ 7; Horton Aff. at ¶ 8. Defendant Horton contends that he has never conducted any personal business in Hawaii (outside of any action taken on behalf of Defendants HC Mortgage and Holco in this case). Horton Aff. at ¶ 3. Defendant Horton further contends that none of the Defendants have owned property, held bank accounts, or owned any assets in Hawaii. *Id.* at ¶ 10.

In 1970, Plaintiff built an 857–unit apartment complex (the "Property") in Honolulu, Hawaii, for tenants of low and moderate income. Opposition at 6. The project was financed by a $16 million loan from the United States Department of Housing and Urban Development ("HUD"). *Id.* Plaintiff executed a note in the principal amount of the loan, and the note was secured by a mortgage executed by Plaintiff on February 11, 1969 (the "Mortgage"). *Id.* at 7. The Mortgage was filed in both the State of Hawaii Bureau of Conveyances ("Bureau of Conveyances") and the Land Court of the State of Hawaii ("Land Court") on February 12, 1969. Opposition Exh. D.

In obtaining the loan, Plaintiff became subject to a regulatory agreement requiring Plaintiff to establish an account, in the mortgagee's control, for the payments on the loan. Opposition at 9; Opposition Exh. F. Plaintiff was also required to establish a second account, under the control

of HUD, for any residual funds. Opposition at 9. To carry out its responsibilities under the regulatory agreement and manage the Property, Plaintiff employed Hawaiian Properties ("Hawaiian Properties"), a Hawaii corporation. Opposition at 9–10.

In 1986, Defendant HC Mortgage purchased the Mortgage through a HUD auction. Opposition at 7; Reply at 3. At some point prior to the dissolution of HC Mortgage, the Mortgage was transferred to Defendant Holco. Opposition at 8; Reply at 3.

Each month, Holco would provide Hawaiian Properties with a report of the accounts created under the regulatory agreement (the "Accounts"). Opposition at 10. At the beginning of each month, Hawaiian Properties would transfer the rent payments from the Property to Holco to be applied to the Accounts. *Id.*

In 2007, Plaintiff entered into a purchase and sale agreement for the sale of the Property. Opposition at 11. However, in order to prepay the remaining amount on the note, Plaintiff was required to get the authorization of HUD. Opposition Exh. C. Therefore, on September 29, 2006, Plaintiff submitted a Notice of Request for Prepayment to Defendant Holco as the mortgagee on the Property. Opposition at 11–12; Reply at 5. Defendant Holco then submitted the early termination request to HUD on October 9, 2006.[5] Opposition at 12; Opposition Exh.

---

5. The Court notes that the HUD Request for Prepayment form required only the signatures of the authorized representatives of the mortgagee (here, Defendant Horton signing for Defendant Holco) and the mortgagee's servicer (also Defendant Horton signing for Defendant Holco). *See* Opposition Exh. E. Thus, it appears that Plaintiff could not have filed this request on its own directly with HUD. Instead, Plaintiff had to request that Defendant Holco file the request as mortgagee on the Property. *See also* Opposition Exh.

K (Defendant Horton's statement in an email to Plaintiff that "Kukui Gardens could not have prepaid the mortgage without the servicer [Holco] securing HUD's consent to prepayment"). At the hearing, the parties further represented that Plaintiff had to go through Holco to get the prepayment approval from HUD. However, neither party could point to a specific contract provision requiring Plaintiff to seek prepayment authorization through Holco, instead of seeking authorization directly from HUD.

E. On December 7, 2007, HUD informed Plaintiff of its consent to prepayment of the loan. Opposition at 12.

In order to clear the title on the Property prior to closing, Plaintiff expected that Defendant Holco would release the Mortgage once HUD approval was obtained and upon payment of the Mortgage balance.[6] *Id.* However, on December 12, 2007, Defendant Horton, on behalf of Defendant Holco, sent an e-mail to Plaintiff's attorney, requesting over $4 million for allegedly unpaid services and contractual obligations, in exchange for the release of the Mortgage.[7] Opposition at 13, Opposition Exh. H. Plaintiff disagreed that any additional amount beyond the Mortgage balance was owed Defendant Holco, and sent a letter to Defendant Holco (addressed to Defendant Horton) demanding release of the Mortgage without any further payment so that the title could be cleared. Opposition Exh. I. Defendant

Holco refused to release the Mortgage at that point. Opposition at 16.

Despite the inability to obtain a release of the Mortgage, the sale of the Property closed on December 18, 2007, when Plaintiff placed an amount of money in escrow that was more than the balance due under the note and Mortgage. Opposition at 17. Plaintiff also had to place a similar amount in escrow as indemnity for the title company.[8] Opposition at 17.

On December 24, 2007, Plaintiff again sent a letter to Defendant Holco, requesting the immediate return of all funds and the release of the mortgage, and notifying Defendant Holco of the closing of the sale of the Property. Opposition at 18; Opposition Exh. J. On December 25, 2007, Defendant Horton responded (on behalf of Defendant Holco) by e-mail and again asserted that Defendant Holco was owed money and should be able to retain such amount before returning any remaining funds.[9] Opposition at 19–20; Opposition

---

6. At the hearing, Defendants' attorney stated that a portion of interests in the Mortgage were sold to outside investors at some point after HC Mortgage acquired the Mortgage. Defendant's counsel admitted that he was not definitively sure that Holco presently holds all interests in the Mortgage. If there are still outstanding holders of interests in the Mortgage, clearing the title will require a more complicated procedure than a simple release from Holco.

7. Specifically, Defendant Horton insisted that Plaintiff owed Holco $4,197,630.42. *See* Opposition Exh. H. The $4 million figure included the Mortgage balance of $1,697,630.42. *Id.* The figure also included a request for payment to Holco of $2.5 million, which Defendant Horton "conservatively" estimated was the fair market value of Holco's securing of HUD's consent for prepayment of the loan. *See id.* On the other hand, the amount in the Accounts totaled $4,122,513.25. *Id.* Thus, Defendant Horton was stating that Holco was entitled to the entire remaining balances in the Accounts, plus approximately $75,000 more still owed by Plaintiff. *See id.* However, Defendant Horton was willing to forgive the additional $75,000 and "call it even." *Id.*

8. Specifically, Plaintiff placed $1.8 million in escrow to prepay the loan, and $1.8 million in escrow to cover indemnification of the title company. Opposition at 17.

9. This time, Defendant Horton adjusted the amounts owed to Holco, stating that the reasonable value of obtaining HUD's consent for prepayment of the loan was 1.25% of the $132 million sale price, or $1.6 million, a value down $900,000 from Defendant Horton's "conservative" estimate just two weeks earlier. *See* Opposition Exh. K. Defendant Horton also stated that Holco was owed "1/2 of 1% of the $120,000,000 cash flow [evidently $600,000] that the servicer has managed on behalf of Kukui Gardens during the past 21 years." *Id.* Finally, in addition to all amounts claimed in his e-mail two weeks earlier, Defendant Horton explained that Holco would retain $600,000 to resolve an account discrepancy that had existed for several years. *See id.* At the hearing, Defendants' attorney stated that although there was no contract provision authorizing either the fee for obtaining HUD's consent or the servicing fee, nevertheless, Defendant Horton felt that Holco was entitled to such fees based on "equity."

Exh. K.

On January 19, 2008, Defendant Horton sent a letter to the title company, stating that Holco was retaining funds until a resolution could be met, but also noting that the Mortgage was paid in full. Opposition at 20; Opposition Exh. L; Reply at 6–7. The letter also included a document purportedly releasing the Mortgage. Opposition at 21; Opposition Exh. L. However, the release was apparently insufficient because Holco was not the record holder of the Mortgage. Opposition at 21. This lawsuit is a result of the parties' inability to come to a resolution on the funds left in the Accounts and the release of the Mortgage.

Plaintiff contends that Defendants have no legal or equitable right to retain any remaining funds. Complaint at 35–36. Plaintiff requests this Court to order: (1) that Defendants immediately release all funds owed to Plaintiff; (2) that Defendant Holco provide a proper release of the Mortgage; and (3) that Defendants pay money damages. *Id.* at 36–37.

## DISCUSSION

### I. Motion to Dismiss for Lack of Personal Jurisdiction

#### A. Standard

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004). It is within the Court's discretion to allow the plaintiff to submit affidavits, allow affida-

vits plus discovery, or to conduct an evidentiary hearing. *Data Disc., Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977). When the Court rules without conducting an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts" through the submitted materials in order to avoid dismissal.[10] *Schwarzenegger*, 374 F.3d at 800; *Data Disc.*, 557 F.2d at 1285. In such cases, the Court only inquires into whether the plaintiff's "pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger*, 374 F.3d at 800 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir.1995)).

"In determining whether [the plaintiff] has met this burden, uncontroverted allegations in [the] complaint must be taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (*quoting WNS Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir.1989)); *accord Pure, Ltd. v. Shasta Bev., Inc.*, 691 F.Supp. 1274, 1277 (D.Haw.1988).

#### B. Analysis

To subject a nonresident defendant to suit, both the long-arm statute of the state in which the Court sits and constitutional due process requirements must be satisfied.[11] The Hawaii Supreme Court interprets H.R.S. § 634–35 as allowing jurisdic-

---

**10.** The plaintiff "must eventually establish jurisdiction by a preponderance of the evidence either at a pretrial evidentiary hearing or at trial." *Hi–Pac, Ltd. v. Avoset Corp.*, 980 F.Supp. 1134, 1137 (D.Haw.1997).

**11.** Because there is no applicable federal statute governing jurisdiction for this action, Ha-

waii's long-arm statute, H.R.S. § 634–35, controls. *See, e.g., Loral Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 559 (9th Cir.1995). Further, because Plaintiff asserts that Defendant Horton committed a tortious act and transacted business in Hawaii, the statute applies. H.R.S. § 634–35(a)(1), (2).

tion "to the full extent permissible by the Due Process Clause of the Fourteenth Amendment." *Cowan v. First Ins. Co.,* 61 Haw. 644, 649, 608 P.2d 394, 399 (1980); *accord Robinson Corp. v. Auto–Owners Ins. Co.,* 304 F.Supp.2d 1232, 1236 n. 7 (D.Haw.2003) (citation omitted). Because Hawaii's long-arm statute reaches to the full extent permitted by the Constitution, the Court need only determine whether due process permits the exercise of personal jurisdiction. *See, e.g., Schwarzenegger,* 374 F.3d at 800–01.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *accord Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 269–70 (9th Cir.1995). Due process is satisfied so long as the Court has either general jurisdiction or specific jurisdiction over the defendant. *Doe v. American Natl. Red Cross,* 112 F.3d 1048, 1050 (9th Cir.1997); *Robinson,* 304 F.Supp.2d at 1236.

General jurisdiction exists only when the defendant's "activities in the state are 'substantial' or 'continuous and systematic.'" *Sher v. Johnson,* 911 F.2d 1357, 1361 (9th Cir.1990) (quoting *Data Disc.,* 557 F.2d at 1287). Plaintiff does not contend that Defendant Horton has engaged in any activity in Hawaii that would confer general jurisdiction on the Court. *See* Opposition at 29. Therefore, the Court must determine whether it has specific jurisdiction over Defendant Horton.

Specific personal jurisdiction requires that the defendant have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *accord Burger King,* 471 U.S. at 475, 105 S.Ct. 2174. To determine whether specific jurisdiction exists, the Court employs "a three-part test to evaluate the nature and quality of [the defendant's] contacts" with the forum state. *Sher,* 911 F.2d at 1361. Specifically:

(1) The non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails [itself] of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger,* 374 F.3d at 801–02 (citing *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987)). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk,* 52 F.3d at 270.

The plaintiff bears the burden of satisfying the first two requirements of the test. *Schwarzenegger,* 374 F.3d at 801–02 (citation omitted). If the plaintiff fails to satisfy either of these requirements, personal jurisdiction is not established in the forum state. *Id.* If the plaintiff succeeds in satisfying both the first and second requirement, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King,* 471 U.S. at 476–78, 105 S.Ct. 2174). The Court may exercise jurisdiction "with a lesser showing of minimum contacts than would otherwise be required if considerations of reasonableness dictate." *Haisten v. Grass Valley Med. Reimb. Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986).

### 1. Defendant Horton is Not Protected by the Fiduciary Shield Doctrine

Defendant Horton contends that this Court lacks personal jurisdiction over him individually because all of his contacts with Plaintiff in Hawaii were in his capacity as President of Holco and HC Mortgage.[12] Motion at 3. In other words, Defendant Horton seeks to employ the fiduciary shield doctrine,[13] which states that "a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prod., Inc.*, 885 F.2d 515, 520 (9th Cir.1989).

The fiduciary shield doctrine, however, does not automatically protect officers or employees acting in their official capacity. In fact, it is unclear whether the doctrine continues to be a viable defense to personal jurisdiction. Instead, the proper inquiry is to look specifically at the minimum contacts of the individual regardless of whether that individual was acting within his or her official capacity. *See Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)

In *Calder*, the United States Supreme Court was faced with a question of whether the Florida employees of the National Enquirer newspaper could be sued as individuals in California, where the subject of the suit was a defamatory article written by one defendant and edited by the other defendant. 465 U.S. at 785–86, 104 S.Ct. 1482. The defendants argued that they were simply doing their jobs and the fact that the newspaper itself was subject to personal jurisdiction in California did not equate to each defendant being subject to personal jurisdiction individually. *Id.* at 789, 104 S.Ct. 1482. The Supreme Court agreed in part, holding that personal jurisdiction over the Enquirer in California did not automatically establish personal jurisdiction against the defendants. *Id.* at 790, 104 S.Ct. 1482. But the Supreme Court further held that "[o]n the other hand, their status as employees does not somehow insulate them from jurisdiction. *Each defendant's contacts with the forum State must be assessed individually*."[14]  *Id.*

---

12. The instant Motion does not contest personal jurisdiction as to HC Mortgage or Holco. Given the current status of the case, the Court does not address whether it has jurisdiction over HC Mortgage, as that company has been administratively dissolved. *See* footnote 4, *supra.* Defendants Holco and HC Mortgage, however, may not contest the Court's exercise of personal jurisdiction because any such challenge was absent from their instant Motion for Improper Venue, and thus waived. *See* Fed.R.Civ.P. 12(h)(1)(a). At the hearing, Defendants' attorney stated that there was no opposition to the exercise of personal jurisdiction over Holco and HC Mortgage. Defendants' attorney further stated, however, his intention to file a motion to dismiss as to HC Mortgage because it is a defunct corporation.

13. Defendant Horton's Motion never explicitly refers to the "fiduciary shield doctrine." However, Defendant Horton is clearly arguing for application of this doctrine, contend-ing that because Defendant Horton has no personal contacts with Hawaii outside of contacts in his official capacity, he is not subject to personal jurisdiction in Hawaii. *See* Motion at 3.

14. In a case decided the same day as *Calder,* the Supreme Court reinforced its rejection of blanket protection from the exercise of personal jurisdiction for officers or employees acting only in their official capacity:

In *Calder v. Jones*, we today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. *Each defendant's contacts with the forum State must be assessed individually.*

(emphasis added).

Thus in *Calder*, the Supreme Court effectively abolished the fiduciary shield doctrine, and in its place employed a typical minimum contacts analysis for employees who are sued individually for acts performed in their official capacities.[15] *See Brink v. First Credit Res.*, 57 F.Supp.2d 848, 860 (D.Ariz.1999) (holding that after *Calder*, "the jurisdictional question [now] . . . is whether the Court's exercise of jurisdiction accords with 'traditional notions of fair play and substantial justice' embodied in the Due Process clause of the Fourteenth Amendment and not whether the fiduciary shield doctrine bars jurisdic-

tion"). The *Calder* Court also adopted the California Court of Appeals' "effects" test, holding that California had personal jurisdiction over the defendants individually because even though their alleged tortious actions occurred in Florida, defendants reasonably knew that such behavior could cause harmful effects to the plaintiff in California. *Id.* at 787, 789–90, 104 S.Ct. 1482.

The Ninth Circuit, following *Calder*, has similarly limited the application of the fiduciary shield doctrine. In *Davis v. Metro Prod., Inc.*, the defendants, the two sole shareholders and officers of a corporation, asserted that the court lacked personal

---

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (emphasis added) (internal citations omitted).

**15.** Defendant Horton relies on two Hawaii Supreme Court cases to support the notion that because Defendant Horton's contacts were only in an official capacity, and because he has insufficient minimum contacts individually, this Court may not exercise personal jurisdiction over him. *See Kailieha v. Hayes*, 56 Haw. 306, 536 P.2d 568 (1975); *Shaw v. North American Title Co.*, 76 Hawai'i 323, 876 P.2d 1291 (1994). Defendant Horton's reliance on these cases is not persuasive because these cases are factually distinguishable from the case at hand. In *Kailieha*, the Hawaii Supreme Court held that there was no personal jurisdiction where "there was only a chance encounter between a Hawaii resident visiting in Virginia and a physician who was engaged in a strictly localized medical practice." 56 Haw. at 312, 536 P.2d at 572. The plaintiff had been injured in an automobile accident in Hawaii by the driver of another car who lost consciousness as a result of drugs prescribed to her when she visited a doctor in Virginia on a trip. *Id.* at 306–07, 536 P.2d at 569. The Hawaii Supreme Court found that the defendant doctor had no minimum contacts with Hawaii because the case did not "involv[e] a defendant who introduces a defective product into the stream of commerce," nor was it a case "involving an intentional tort, nor one where the act was performed for the purpose of causing an effect in

Hawaii." *Id.* at 312, 536 P.2d at 572. The case at hand, however, does involve alleged intentional torts, as well as acts directed specifically at the Plaintiff in Hawaii. This case also involves an ongoing contractual relationship, and was not "an isolated encounter" in another state as was the case in *Kailieha*. *Id.* at 314, 536 P.2d at 573. Further, *Kailieha* had nothing to do with the contacts of an individual acting in an official capacity.

Similarly, Defendant Horton's reliance on *Shaw* is misplaced. Defendant Horton stated that the *Shaw* court held that "minimum contacts could not be established with the California defendant, and the case was dismissed for want of personal jurisdiction." Motion at 7. In fact, the court's holding in *Shaw* was the complete opposite. In *Shaw*, the Hawaii Supreme Court held that Plaintiff had failed to show that the defendant company "transacted business" in Hawaii for that portion of the Hawaii long-arm statute to apply. 76 Hawai'i at 328, 876 P.2d at 1296. However, the court further held that the plaintiff sufficiently alleged that the defendant company committed a "tortious act" within the meaning of H.R.S. § 634–35. *Id.* Moreover, the court applied *Calder*, and found that the defendant company intentionally directed their actions to the plaintiff in Hawaii, and further, that due process requirements were satisfied. *Id.* at 330–32, 876 P.2d at 1298–1300. Therefore, in *Shaw*, personal jurisdiction was proper, and the lower court's order of dismissal was vacated, not affirmed as Defendant Horton's Motion mistakenly asserts.

jurisdiction over them individually because all of the alleged fraud and racketeering occurred only when defendants were acting in their official capacities. 885 F.2d at 520. The Ninth Circuit declined to apply the fiduciary shield doctrine, and held that such a doctrine could not limit the exercise of personal jurisdiction "[where a state's] long-arm statute extends to the limit of constitutional due process." *Id.* at 522; *accord Brink*, 57 F.Supp.2d at 859. The Ninth Circuit noted that in *Calder*, and its companion case *Keeton*, the Supreme Court disregarded the fiduciary shield doctrine, and simply examined whether each individual had sufficient minimum contacts to meet due process requirements:

> [T]he Supreme Court applied the constitutional due process analysis to the contacts of the individuals concerned; it did

not consider the existence of a state-created corporate form to create a due process limit on jurisdiction.

*Davis*, 885 F.2d at 521. Following the Supreme Court's lead, the Ninth Circuit only looked directly at each officer's contacts in their official capacity with the forum state, holding that sufficient minimum contacts existed for the forum to assert personal jurisdiction over the defendants individually.[16] *See Davis*, 885 F.2d at 522–23 (holding that the officers "purposefully directed their activities toward Arizona" and that their actions were more than "untargeted negligence" as they should have known that their actions could affect the plaintiff negatively in the forum state).[17]

Thus, because the fiduciary shield doctrine does not limit the exercise of personal jurisdiction on Defendant Horton,[18] the

**16.** The Ninth Circuit also discussed how even when the fiduciary shield doctrine has applied, courts could still exercise jurisdiction over an individual acting in an official capacity by "piercing the corporate veil" for jurisdictional purposes. *Davis*, 885 F.2d at 520–21. In other words, "the corporate form may be ignored in cases in which the corporation is the agent or alter ego of the individual defendant, or where there is an identity of interests between the corporation and the individuals." *Id.* Plaintiff contends that the Court may assert personal jurisdiction over Defendant Horton because Holco is merely an alter ego of Defendant Horton. Opposition at 25–29. Because the Court determines that the fiduciary shield doctrine does not apply at all in this case, it is unnecessary to determine whether Holco is merely an alter ego of Defendant Horton for the purposes of personal jurisdiction.

**17.** Defendant Horton argues that *Calder* forbids a district court from considering a corporation's overall contacts when determining the propriety of personal jurisdiction over an individual employee. Reply at 8. Though this statement is correct, it is incomplete. *Calder* established that the corporation's contacts as a whole may not be projected onto an individual employee as that individual's own contacts; instead, the individual employee's contacts with the forum state should be the focus

of the examination. However, as discussed above, it is irrelevant whether those individual contacts were personal in nature, or while acting in an official capacity. *See Calder*, 465 U.S. at 789–790, 104 S.Ct. 1482 (examining defendants' actions as employees and finding purposeful availment); *Davis*, 885 F.2d at 522–23 (examining defendants' official acts as corporate officers and finding purposeful availment); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259–60 (9th Cir. 1989) (examining defendant's contacts of two phone calls and a letter, all in his capacity as university vice-president, and finding personal jurisdiction).

**18.** Ignoring the corporate form for personal jurisdiction does not alter the ultimate protection from personal liability that a corporation affords its officers. Thus, "there may conceivably be anomalous consequences to asserting long-arm jurisdiction over corporate officers for reasons distinct from those that would allow the corporate veil to be pierced in questions of liability." *Davis*, 885 F.2d at 523 n. 10. Since Defendant Horton's personal liability is not an issue to be addressed in the instant motions, the parties appropriately did not present evidence on that matter. "The fiduciary shield doctrine, however, is not concerned with liability. It is concerned with jurisdiction[.]" *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2d Cir.1981).

Court need only look at Defendant Horton's contacts with Hawaii under the Ninth Circuit's three-part test, to determine if this Court may properly assert personal jurisdiction in satisfaction of due process requirements.[19]

### 2. Purposeful Availment

The first prong of the three-part specific jurisdiction test contemplates whether the defendant's "conduct and connection with the forum state are such that the defendant should reasonably anticipate being haled into court there." *Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements Limited,* 328 F.3d 1122, 1130 (9th Cir.2003) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). This prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of the activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir.2006) (en banc). This analysis prevents findings of personal jurisdiction that might otherwise arise "as the result of random, fortuitous, or attenuated contacts." *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174.

Contract and tort cases are treated somewhat differently under the purposeful availment analysis in the Ninth Circuit. *Yahoo!,* 433 F.3d at 1206; *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir.1991). In tort cases, the purposeful availment prong of the test is measured by the *Calder* "effects" test. *See Calder,* 465 U.S. 783, 104 S.Ct. 1482; *see also Roth,* 942 F.2d at 621; *Resnick v. Rowe,* 283 F.Supp.2d 1128, 1136–37 (D.Haw.2003). The test is satisfied if the defendant is alleged to have "1) committed an intentional act; 2) expressly aimed at the forum state; [and] 3) causing harm, the brunt of which is suffered—and which the defendant knows is likely to be suffered—in the forum state." *Harris,* 328 F.3d at 1131; *accord Resnick,* 283 F.Supp.2d at 1137. In cases arising out of contractual relationships, the Ninth Circuit analyzes purposeful availment by looking at "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Sher v. Johnson,* 911 F.2d 1357, 1362 (9th Cir.1990) (quoting *Burger King,* 471 U.S. at 479, 105 S.Ct. 2174).

■ Under both the tort and contract analysis, Plaintiff has satisfied its burden in establishing the purposeful availment prong.[20] First, under the tort analysis,

---

Plaintiff has made a sufficient prima facie showing that Defendant Horton was intimately involved with Holco's contacts in Hawaii, such that the Court should disregard the fiduciary shield doctrine in this case and exercise personal jurisdiction over Defendant Horton personally so long as he has sufficient minimum contacts. The Court notes, however, that this determination as to personal jurisdiction is completely unrelated to any ultimate determination of Defendant Horton's personal liability, which Plaintiff must still prove.

**19.** As noted in footnote 12, *supra,* Defendants' conceded at the hearing that the Court has personal jurisdiction over Holco; Defendants Holco and HC Mortgage have also waived their right to challenge personal jurisdiction. Based on what has been presented to the

Court, all of Holco's business contacts with Plaintiff in Hawaii have come through Defendant Horton acting in his capacity as President.

**20.** It is unnecessary for the Court to apply a single analysis to all of Plaintiff's claims. Some courts have applied a contract analysis to tort claims, where the tort claims "all arise out of [a] contractual relationship with the defendants." *Sher,* 911 F.2d at 1362. Others have applied the *Calder* "effects" test even though the claims arose under a contractual relationship. *See Davis,* 885 F.2d 515 (applying *Calder* to tort claims arising under a contract for the purchase of master videotape series). Finally, some courts have divided the contract and tort claims, and applied each analysis separately to each category of claims.

Defendant Horton clearly intended his actions when he interacted with Plaintiff as President of Holco. Defendant Horton intended to retain the funds from the Accounts until an agreement was met, intended to demand a portion of the funds for Holco, and intended to refuse to give a release of the Mortgage unless Plaintiff paid the fees that Defendant Horton demanded. Further, Defendant Horton surely directed those actions specifically toward Plaintiff in Hawaii. In its Reply, Defendant Horton admits that Holco "directed some activities toward and/or consummated some transactions in Hawaii." Reply at 10. Based on the evidence presented to the Court, it was Defendant Horton who directed and consummated all of those activities as President of Holco. Finally, Defendant Horton understood that the effect of his action would be felt by Plaintiff in Hawaii because Hawaii is where the Property is located and where Plaintiff is based.[21] Defendant Horton's acts were more than "untargeted negligence," and Defendant Horton reasonably understood the potential injurious effects his actions would have in Hawaii. *See Davis,* 885 F.2d at 523.

Second, under a contract analysis, Plaintiff has similarly met its burden. As noted above, Defendant Horton admits that Holco "directed some activities toward and/or consummated some transactions in Ha-

waii." Reply at 10. This statement mimics the test for purposeful availment itself, requiring that "[t]he non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof." *Schwarzenegger,* 374 F.3d at 802 (citing *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir.1987)). Again, assuming all the allegations are true, it was Defendant Horton who actually initiated these activities. Defendant Horton signed on behalf of Holco to request HUD's authorization for prepayment of the loan. *See* Opposition Exh. E. Defendant Horton also e-mailed Plaintiff explaining the reasons why Holco was due money from the reserve funds and refusing to release the Mortgage until Plaintiff agreed. *See* Opposition Exh. H. Thus, like Holco, Defendant Horton has directed sufficient activities toward Hawaii.

### 3. Arising Out of Forum Related Activities

The second prong of the jurisdictional analysis is met if the claim "arises out of or relates to the defendant's forum-related activities." *Harris,* 328 F.3d at 1129 (quoting *Core–Vent Corp. v. Nobel Indust. AB,* 11 F.3d 1482, 1485 (9th Cir. 1993)). In short, the second prong is "met if 'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." *Loral Ter-*

---

*See Resnick,* 283 F.Supp.2d 1128. Here, Plaintiff's claims, including mostly tort claims, all arise from a contractual relationship with Defendants. *See Beneficial Hawaii, Inc. v. Kida,* 96 Hawai'i 289, 312, 30 P.3d 895, 918 (2001) ("[N]otes and mortgages are contracts."). Applying both the tort and contract claim analysis, the Court determines that both tests are satisfied for all of Plaintiff's claims.

**21.** Defendant Horton further understood that his purported release of the Mortgage would effect the Property and Plaintiff in Hawaii; a release that the Land Court ultimately con-

cluded was defective, complicating Plaintiff's ability to clear title. This inability to clear title forced Plaintiff to place $1.8 million in escrow, an amount that will remain there until title can be properly cleared.

Defendant Horton also understood the effect on Plaintiff when, on behalf of HC Mortgage, he sold interests in the Mortgage to outside investors. Surely, Defendant Horton understood the difficulty this would create for Plaintiff in Hawaii once Plaintiff attempted to clear title to the Property by seeking a release of mortgage upon payment of the Mortgage balance.

*racom,* 49 F.3d at 561; *see also Gray & Co. v. Firstenberg Mach. Co., Inc.,* 913 F.2d 758, 761 (9th Cir.1990). This prong is clearly met as Plaintiff would not have suffered its alleged injuries, and thus would have no cause of action, had Defendants Horton and Holco not refused to release the Mortgage and had Defendant Horton promptly returned the funds from the Accounts. Accordingly, the Court finds that Defendant Horton's contacts with Hawaii satisfy the second prong of the analysis for specific jurisdiction.

### 4. Reasonableness

Because Plaintiff has succeeded in satisfying both the first and second requirements of the jurisdictional analysis, "the burden ... shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." [22] *See Schwarzenegger,* 374 F.3d at 802 (quoting *Burger King,* 471 U.S. at 476–78, 105 S.Ct. 2174). The Court may exercise jurisdiction "with a lesser showing of minimum contacts than would otherwise be required if considerations of reasonableness dictate." *Haisten v. Grass Valley Med. Reimb. Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986). The reasonableness determination requires the Court to consider the following factors:

(1) The extent of the defendant's purposeful interjection into the forum state's affairs;

(2) the burden on the defendant of defending in the forum;

(3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

*Core–Vent,* 11 F.3d at 1487–88 (citation omitted). The Court balances all seven factors, recognizing that no one factor is dispositive in itself. *Id.*

■ Defendant Horton has failed to meet his burden in showing why jurisdiction would be unreasonable. In fact, Defendant Horton fails to directly address the reasonableness prong except for a bare assertion that Plaintiff did not sufficiently prove reasonableness. That said, the Court can extrapolate a few arguments for unreasonableness from Defendant Horton's other arguments.

### (1) Purposeful Interjection

The Court first considers the extent of Defendant's purposeful interjection into the forum state. "The degree of interjection is a factor to be weighed in assessing the overall reasonableness of the jurisdiction." *Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316, 1323 (9th Cir.1998) (quoting *Core–Vent,* 11 F.3d at 1488). "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise." *Core–Vent,* 11 F.3d at 1488 (citation omitted). Here, Defendant Horton interjected himself into Hawaii by managing Plaintiff's reserve and residual Accounts funded by income accrued from the Property in Hawaii; by communicating directly with Plaintiff in Hawaii; by submitting the request for prepayment approval to HUD, on behalf of Plaintiff; and in refusing to return the funds to Plaintiff, and refusing to release the Mortgage re-

---

**22.** Defendant Horton incorrectly argues that Plaintiff has failed to satisfy the third prong. Reply at 11. In fact, it is Defendant Horton's burden to show that exercising jurisdiction would be unreasonable; Defendant Horton has failed to do so here.

corded in Hawaii and subject to Hawaii law, until Plaintiff agreed to pay the fees that Defendant Horton demanded.

Because Defendant Horton interjected himself into Hawaii to a palpable degree and the Court found that Defendant Horton's contacts with Hawaii were sufficient to establish purposeful availment, the Court finds that this factor weighs in favor of Plaintiff. *See Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir.1988) (finding that the factor of purposeful interjection is analogous to the purposeful availment analysis).

### (2) Burden on Defendant

Defendant Horton asserts that the traveling distance from Indiana to Hawaii would be burdensome. Motion at 11–12. However, "unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'" *Panavision*, 141 F.3d at 1323 (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128–29 (9th Cir.1995)).

The inconvenience of litigating in Hawaii does not amount to a deprivation of due process in this case. *See Resnick*, 283 F.Supp.2d at 1141 (noting that the burden on defendants and their out-of-state witnesses was significant, but finding that the inconvenience did not amount to a due process deprivation). Moreover, this Court has observed that "[r]ecent advancements in communication and transportation ... have greatly reduced the inconvenience once associated with defending in another forum." *Robinson*, 304 F.Supp.2d at 1240 (citing *Panavision*, 141 F.3d at 1323). Presumably, if Defendant Horton lives part of the year in Indiana, and the other part in Florida, he is accustomed to traveling considerable distances, and thus litigating in Hawaii would not be unreasonably burdensome. *See* Motion at 9.

### (3) Conflict with Indiana Sovereignty

The next factor is the extent to which the exercise of jurisdiction would conflict with the sovereignty of Defendant Horton's state. Defendant Horton presents no evidence demonstrating a conflict with the sovereignty of Indiana, which is Defendant Horton's state of citizenship. *See* Opposition at 47 (noting the similarities between Indiana and Hawaii law for Plaintiff's claims). Moreover, the sovereignty of a defendant's state is not a significant consideration in actions between citizens of the United States. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 841 (9th Cir.1986).

### (4) Interest of Hawaii

The Court next considers Hawaii's interest in adjudicating the suit. The State of Hawaii has a strong interest in adjudicating this suit because the Property is located in Hawaii. The Mortgage is subject to Hawaii law; it was recorded in Hawaii in both the Bureau of Conveyances and in the Land Court. The escrow accounts held by the title company are also in Hawaii. Moreover, Hawaii has a significant interest in "providing an effective means of redress for its residents tortiously injured." *See Panavision*, 141 F.3d at 1323. Plaintiff here, a Hawaii corporation, as well as its shareholders, were allegedly defrauded by Defendant Horton. Thus, Hawaii has a much greater interest in adjudicating this suit than any other state.

### (5) Efficiency

The next factor concerns the efficiency of the forum. "Unlike the burden on the defendant, this factor involves a comparison of alternative forums." *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852 (9th Cir.1993). Here, Plaintiff is registered in Hawaii with its principal place of business in Hawaii. Thus, the majority of Plaintiff's witnesses reside in Hawaii. The efficiency of this forum is furthered by the fact that Hawaii law gov-

erns the underlying Mortgage to which Defendant Holco is mortgagee and Plaintiff is the mortgagor. In addition, this factor is no longer weighed heavily considering the advances in transportation and communication, to which Defendant Horton appears to be well-accustomed. *Panavision*, 141 F.3d at 1323.

#### (6) Importance of the Forum

The Court next considers the importance of the forum to Plaintiff's interest in convenient and effective relief. As discussed above, Plaintiff is a Hawaii business. A majority of Plaintiff's witnesses are located in Hawaii; Plaintiff's exhibits are also mostly located in Hawaii. *See* Opposition at 49. Most importantly, the Property itself is located in Hawaii and subject to Hawaii law.[23]

#### (7) Existence of Alternative Forum

Finally, the Court must determine whether an adequate alternative forum exists. The claims against the Defendants could possibly have been brought in the Northern District of Indiana. Plaintiff bears the burden of proving the unavailability of an alternate forum. *See Core–Vent*, 11 F.3d at 1490. Plaintiff concedes that other potential forums do exist. Opposition at 50. Thus, this factor weighs in favor of Defendant Horton.

#### (8) Summary of the Seven Factors

The Court concludes, based on these seven factors, that Defendant Horton has failed to meet his burden of presenting a compelling case that this Court's exercise of jurisdiction over him would be unreasonable. The Court concludes that the exercise of jurisdiction over Defendant Horton will comport with fair play and

substantial justice and will thus be reasonable.

In summary, the Court concludes that Plaintiff has made a prima facie case that the Court has specific personal jurisdiction over Defendant Horton. The Court's exercise of personal jurisdiction will comport with due process. Moreover, Defendant Horton's contacts with Hawaii, as alleged and evidenced by Plaintiff, satisfy Hawaii's long-arm statute. Accordingly, the Court denies Defendant Horton's Motion to Dismiss for Lack of Personal Jurisdiction.

### II. Motion to Dismiss for Insufficient Service of Process

█ Defendant Horton contends that service of process on him was insufficient because service by publication was made only in Hawaii and Indiana, while Defendant Horton was in Florida at the time. The Court disagrees; Plaintiff's service by publication was proper and gave Defendant Horton sufficient notice of the pending lawsuit.

Federal Rule of Civil Procedure 4 provides that an individual may be properly served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located[.]" Fed. R.Civ.P. 4(e)(1). Motion at 12. Under Hawaii law, a defendant may be served by publication once the Plaintiff has made a sufficient showing of a diligent, but unfruitful effort to locate the defendant:

> If the defendant cannot be found to serve or mail the summons and the facts shall appear by affidavit or otherwise to the satisfaction of the court, it may or-

---

**23.** Defendant Horton argues that the only "property" in question is the money held in Accounts in Indiana and Illinois. Motion at 10. However, the Court disagrees. This whole lawsuit revolves around the Property in Honolulu, to which Defendant Holco held a Mortgage and from which the money held by Defendant Holco derived. A significant portion of this lawsuit will also be dedicated to the process of clearing title to the Property and determining whether there are still any outstanding interests in the Mortgage. Thus, it is important that the dispute be resolved in Hawaii.

der that service be made by publication of summons in at least one newspaper published in the State and having a general circulation in the circuit in which the action has been instituted, in such manner and for such time as the court may order, but not less than once each week in four successive weeks, the last publication to be not less than twenty-one days prior to the return date stated therein unless a different time is prescribed by order of the court.

H.R.S. § 634–36. Here, Plaintiff made a diligent effort to locate Defendant Horton so as to serve him directly. *See* Opposition Exh. N. Only after those efforts failed, Plaintiff sought and received Court permission to serve Defendant Horton by publication. *See id.*

Service by publication meets the constitutional requirements of due process. *Eto v. Muranaka*, 99 Hawai'i 488, 498, 57 P.3d 413, 423 (2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Accordingly, Defendant Horton does not contend that service by publication itself was improper in this case, but only that publication should have been made in Florida as well, given that Plaintiff knew that Defendant Horton was in Florida. Motion at 12. Publication in Florida was unnecessary, however, and Plaintiff's publication in Hawaii and Indiana was sufficient.

■ Service by publication only requires the giving of "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." [24] *Mullane*, 339 U.S. at 314, 70 S.Ct. 652. Defendant Horton admits that he is a citizen of Indiana. Horton Aff. at ¶ 1. Further, although Plaintiff did have information that Defendant Horton was in Florida, Plaintiff had no information as to where in Florida, nor for how long Defendant Horton would be in Florida.[25] Under these circum-

---

**24.** Defendant Horton was well aware of the commencement of the suit. In initially attempting to serve Defendants, Plaintiff sent a Notice of Commencement of Action and Request for Waiver of Service Process ("Notice") to each of the Defendants' last known addresses. Opposition Exh. N. Along with the mailed copies, Plaintiff also attached the Notice in an e-mail sent to Defendant Horton's e-mail address that he had been using to communicate with Plaintiff up until one month prior. Although this was not an official summons, Defendant Horton was well aware of the impending lawsuit as he was most likely still using this e-mail address. Further, Plaintiff's attorney was contacted by a "Mark Geisler," who stated he had represented Defendant Horton in other matters, and that "Kevin Horton was aware of the lawsuit." Opposition Exh. M at 7. However, when Plaintiff requested that Mr. Geisler accept service on behalf of Defendant Horton, Mr. Geisler refused to do so, stating that he was not authorized to do so. *Id.* Finally, Plaintiff's private investigator was actually able to contact Defendant Horton directly on his cell phone to inform Defendant Horton of the lawsuit and Plaintiff's desire to formally serve Defendant Horton; however, Defendant Horton was "uncooperative" and apparently refused to give any information so that Plaintiff could serve Defendant Horton directly. *See* Plaintiff Kukui Gardens Corporation's Ex Parte Motion for Service by Publication on Defendants, Exh. I at ¶ 29, Civ. No. 08–00049 (May 27, 2008). Thus, Defendant Horton was afforded reasonable notice of the lawsuit. The Court finds difficulty sympathizing with Defendant Horton's claim of insufficient process when he has clearly attempted to prevent Plaintiff from being able to serve him directly.

**25.** Further, it is unrealistic to assume that Defendant Horton would have been any more likely to notice a publication of summons in a Florida newspaper than one in Indiana, or even one in Hawaii. "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed." *Mullane*, 339 U.S. at 315, 70 S.Ct. 652. Re-

stances, it was reasonable for Plaintiff to publish in Honolulu, Hawaii and South Bend, Indiana so as to notify Defendant Horton of the lawsuit.[26] *See Mullane,* 339 U.S. at 315, 70 S.Ct. 652 ("The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected[.]"). Publication in Florida would have provided no greater likelihood of notifying Defendant Horton directly, particularly because Plaintiff had no information as to where Defendant Horton was actually located within Florida, or whether he would actually be there for any length of time. Where, as in this case, the definite location of a defendant cannot be ascertained with any certainty, "employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing [the defendant's] rights." *See Eto,* 99 Hawai'i at 498, 57 P.3d at 423 (quoting *Mullane,* 339 U.S. at 317, 70 S.Ct. 652).

Accordingly, the Court denies Defendant Horton's Motion to Dismiss for Insufficient Service of Process.

## III. Motion to Dismiss for Improper Venue, or, in the Alternative, Transfer

Unlike the above two motions for dismissal, which pertained only to Defendant Horton, all of the Defendants (Defendants Holco, HC Mortgage, and Kevin C. Horton) move this Court to dismiss for improper venue, or in the alternative, to transfer the case to the Northern District of Indiana.

### A. Standard

The general venue statute, 28 U.S.C. § 1391, states in subsection (b):

A civil action wherein jurisdiction is not founded solely only on diversity of citizenship may, except as otherwise provided by law, be brought only in

(1) a judicial district where any defendant resides, if all defendants reside in the same State,

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or

(3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

Pursuant to 28 U.S.C. § 1406(a): "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Finally, even if venue is proper in a district pursuant to pursuant to 28 U.S.C. § 1391, the district court may transfer the case to another district for the convenience of the parties and witnesses. *See* 28 U.S.C. § 1404(a). Section 1404(a) states: "For the convenience of parties and witnesses, in the interest of justice, a district

---

gardless of such odds, "if with due regard for the practicalities and peculiarities of the case the[ ] conditions [of reasonable effort to provide notice] are reasonably met[,] the constitutional requirements are satisfied." *Id.*

**26.** It was further reasonable to publish in Indiana because along with Defendant Horton's citizenship in Indiana, Holco is an

Indiana company and HC Mortgage was an Indiana business until it was dissolved. Horton Aff. at ¶ 1, 8. Because Defendant Horton is president and former president of both of these companies, it is reasonable to assume that publishing in Indiana would provide sufficient notification not only to Holco, but to Defendant Horton as well.

court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The purpose of this section is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Hi–Pac, Ltd. v. Avoset Corp.*, 980 F.Supp. 1134, 1139 (D.Haw.1997) (internal quotation marks and citations omitted).

■ A motion to transfer venue pursuant to § 1404(a) "requires the Court to weigh multiple factors in its determination of whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–499 (9th Cir. 2000). For example, the court may consider: (1) the location where the relevant agreements (if any) were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Id.* (additional significant factors include the presence of a forum selection clause and any relevant public policy of the forum state). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843 (citation omitted). For purposes of a § 1404(a) request to transfer, the moving party ultimately has the burden of showing that an alternative forum is the more appropriate forum for the action. *Jones*, 211 F.3d at 499.

**B. Analysis**

■ Venue is proper in the District of Hawaii. Defendants contend that the applicable venue statute in this case, § 1391(b), is to be interpreted as setting a hierarchal order—in other words, that venue can only lie in a judicial district where any defendant resides, if all defendants reside in the same state; and only if all the defendants do not reside in the same state can venue then lie in a district in which a substantial part of the events or omissions giving rise to the claim occurred. Motion at 11; *see Cobra Partners L.P. v. Liegl*, 990 F.Supp. 332, 335 (S.D.N.Y.1998). Thus, Defendants assert that in this case, because Defendant Horton, HC Mortgage, and Holco all reside in Indiana for the purposes of venue, the only proper place for venue to lie is the Northern District of Indiana.

Though the Court understands that Defendants are advocating for a change in the law, the weight of authority is clearly opposed to Defendants' position. The hierarchical interpretation of the venue statute "represent[s] the minority view[.]" *Wise v. Lindamood*, 89 F.Supp.2d 1187, 1196 (D.Colo.1999).[27] Only a few courts have employed this interpretation, likely because it contravenes the legislative history of the venue statute. In 1966, Congress amended the venue statute, adding § 1391(b)(2). In the legislative history, Congress made it clear that this section was added "to enlarge venue authority so as to authorize any civil action to be brought in the judicial district where the claim arose." Sen. Rep. No. 89–1752 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3693, 3693. Congress further clarified that the potential districts where venue could lie was not in any hierarchical order;

---

**27.** At the hearing, Defendants' counsel agreed that the hierarchical approach is the minority view.

instead, § 1391(b)(1) and (b)(2) allowed venue to lie in potentially more than one district, without a priority for one or the other:

> Subsection 1391(b) would be amended to authorize a civil action wherein jurisdiction is not founded solely on diversity of citizenship to be brought in the judicial district in which the claim arose *as well as* in the district where all defendants reside.

Sen. Rep. No. 89–1752 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3693, 3693 (emphasis added).

█ The Court finds this legislative history persuasive and agrees with the weight of authority that venue may lie *alternatively, in either* a district where defendant resides, if all defendants reside in the same district, or in a district where a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. *See Wise,* 89 F.Supp.2d at 1196 (holding that *Cobra Partners* and other minority view cases were "wrongly decided"); *Gregory v. Pocono Grow Fertilizer Corp.,* 35 F.Supp.2d 295, 298 (W.D.N.Y.1999) ("There is simply nothing in the language of the statute or its legislative history to suggest that the statute is to be read disjunctively or hierarchically. If Congress had, in fact, intended that result, it certainly could have drafted the language of the statute to that end."); 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3804 (3d. ed. 2007) (This [hierarchical] view goes against the plain language of the statute and the great weight of authority.... Venue is proper if either one of [1391(b)(1) or (b)(2) ] is met.").

Venue is thus proper pursuant to § 1391(b)(2) because a substantial part of the property that is the subject of this action is situated in Hawaii. Defendants contend that the property in question is the money allegedly misappropriated by Defendants and situated in Accounts in Indiana and Illinois, and thus venue is still not appropriate in Hawaii under § 1391(b)(2). The Court agrees that the Accounts, and the money in them, could be considered part of the property that is the subject of dispute. But the Court finds that the Property in Honolulu, the Mortgage recorded in Hawaii, and the escrow accounts in favor of the title company are a much more significant portion of the property underlying the cause of action.[28] Thus, the Court denies Defendants' Motion to Dismiss for Improper Venue because venue in the District of Hawaii is proper pursuant to § 1391(b)(2).

█ Further, having considered all the factors above in determining the propriety of transfer, the Court finds that Defendants have failed to make a strong showing of inconvenience such that transfer of venue would be appropriate in this case. First, a majority of the relevant agreements were negotiated or executed in Hawaii: the Mortgage recorded in the Bureau of Conveyances and the Land Court, the escrow accounts, and the agreement for sale of the Property. Second, Hawaii courts are more familiar with Hawaii law, which governs the Mortgage, the escrow accounts, the sale of the Property, the process of clearing title to the property, and the elements of the non-federal causes of action. Third, Plaintiff chose Hawaii as the forum for this case, and Plaintiff, a Hawaii corporation was allegedly defrauded. Fourth, as shown above, Defendants

---

**28.** Further, in order to properly release the Mortgage, the process of clearing title on the Property and the Mortgage must be done ac-

cording to Hawaii property law, where both the Mortgage is recorded and where the Property is located.

Holco, HC Mortgage and Horton have contacts directed at Hawaii and subject to Hawaii law. Fifth, these contacts are also the relevant contacts underlying Plaintiff's cause of action. Sixth, Defendants do argue that it would be inconvenient to travel the seven thousand miles to Hawaii to defend itself in litigation. Motion at 11–12. However, as noted *supra,* modern technology has greatly reduced the burdens of traveling to litigate in other forums. *Robinson,* 304 F.Supp.2d at 1240. Seventh, as noted above, most witnesses, besides Defendant Horton himself, are located in Hawaii, or in a location where Hawaii would be just as convenient as Indiana. Eighth and finally, the exhibits and evidence are found both in Hawaii and Indiana, but a majority of significant evidence is located in Hawaii. Accordingly, Hawaii is the most convenient forum and transfer is inappropriate.

### *CONCLUSION*

For the foregoing reasons, the Court:

(1) DENIES Defendant Horton's Motion to Dismiss for Lack of Personal Jurisdiction because the Court has specific personal jurisdiction over Defendant Horton individually, and because the exercise of personal jurisdiction over Defendant Horton satisfies due process requirements and comports with traditional notions of fair play and substantial justice;

(2) DENIES Defendant Horton's Motion to Dismiss for Insufficient Service of Process because Defendant Horton was properly served by publication in Hawaii and Indiana after Plaintiff made reasonable attempts to serve Defendant Horton directly, and because Defendant Horton had reasonable notice of the litigation; and

(3) DENIES Defendants Holco, HC Mortgage, and Kevin C. Horton's Motion to Dismiss for Improper Venue, or in the Alternative, Transfer because a substantial part of the property that is the subject of the action is situated in Hawaii and because transfer is unnecessary.

IT IS SO ORDERED.